GRAY (COLLINS v.).   See Case No. 3,013.

## Case No. 5,715.

### GRAY v. DAVIS et al.

[1 Woods, 420.] [1]

Circuit Court, W. D. Texas.  Jan. Term, 1871.[2]

OBLIGATION OF CONTRACT—SUIT AGAINST A STATE —DUTY OF RECEIVER OF RAILWAY COMPANY—LAND GRANTS—CHARTER.

1. An act of the legislature of Texas whereby a railroad company was incorporated and a grant of lands made on certain conditions to be performed by the company is a contract between the state and the company within the meaning of section 10, art. 1 of the constitution of the United States.

2. A provision of the constitution of Texas adopted subsequently to the passage of such an act, annulling it, impairs the obligation of the contract, and is therefore void.

[Cited in Grand Lodge of State of Louisiana v. City of New Orleans (La.) 11 South. 151.]

3. The state of Texas granted lands to a railroad company on certain conditions which the company performed. A provision in a new constitution of the state purported to annul the grant, and the governor commenced signing patents to private parties for lands included in the grant: Held, that a bill in equity filed against "Edmund J. Davis, Governor of Texas" to restrain him from issuing patents for lands included in the grant, is not a suit against the state of Texas within the meaning of article 11 of amendments to the constitution of the United States.

[See note at end of case.]

4. When G., a citizen of the state of New York, was appointed by a court of competent jurisdiction receiver of the property of a railroad corporation created by the laws of Texas,

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
2 [Affirmed in 16 Wall. (83 U. S.) 203.]

and domiciled in that state, the circuit court of the United States for the Western district of Texas had jurisdiction of a suit brought by such receiver against citizens of that district.

[Cited in Merchants' Nat. Bank v. McLeod, 38 Ohio St. 174; Miller v. Sunde (N. D.) 44 N. W. 302.]

5. The receiver of the property and effects of a railroad corporation appointed by a court of equity represents the creditors of the corporation, so that in a suit brought by the receiver to protect the property of the company, the creditors are neither proper nor necessary parties.

This was a bill in equity filed by John A. C. Gray, a citizen of the state of New York, receiver of the Memphis, El Paso and Pacific Railroad Company against Edmund J. Davis, governor of Texas and Jacob Kuechler, commissioner of the general land office of Texas, both citizens of Texas. The case was argued and submitted on demurrer to the bill.

A. J. Hamilton, E. M. Pease, and Gray & Davenport, for complainant.

Wm. Alexander, Atty. Gen. of Texas, for defendants.

Before WOODS, Circuit Judge, and DUVAL, District Judge.

WOODS, Circuit Judge. This cause having been submitted on demurrer to the bill, all the facts well pleaded by the bill are for this hearing to be taken as true. The bill alleges, in substance, that, on the 4th day of February, 1856, the legislature of the state of Texas passed an act to incorporate the Memphis, El Paso and Pacific Railroad Company, and providing that all vacant lands within eight miles on each side of the extension line of said railroad should be exempt from location or entry from and after the time when such line should be designated by survey, recognition or otherwise; that the lands so exempted should be surveyed by said company, at its own expense, and the odd sections thereof reserved for the company, and the even sections for the use of the state; that upon the grading of successive sections of said road, it should be the duty of the commissioner of the general land office of the state to issue to the company, in its corporate name, eight certificates for 640 acres of land each for each mile so graded, and upon the completion and equipment of successive sections, to issue eight other certificates of 640 acres each, for each and every section so completed and equipped, said certificates to be located upon the odd sections within said reservation, or upon any other vacant and public land in the state, not reserved to the state, or some other corporation, and patents to be issued thereon; that, in reliance upon the grants and guaranties aforesaid of the state of Texas, and in pursuance of the said act of incorporation, the said Memphis, El Paso and Pacific Railroad Company was, in the said year 1856, duly organized, and accepted said grant and reservation; that on or before March 1st, 1860, the company had designated its line of road to the general land office, from the eastern boundary of Texas to El Paso, and surveyed, sectionized, and numbered the sections and fractional sections of vacant land within said reservation, from the eastern line of the state to the Brazos river, which said surveys were duly filed with the commissioner of the general land office; and that said surveys were of great value to the state, and made at a cost to the company of more than one hundred thousand dollars; that the company, after its organization as aforesaid, proceeded to grade its road and roadbed, and in or before the year 1861, the said road was completely graded and ready for the iron rails a distance of sixty-five miles westward from Moor's landing, in the county of Bowie; that the rights and franchises granted to said company have never been forfeited, the legislature having extended, from time to time, the period for the performance of conditions precedent by the company, and the said legislative acts having been recognized by the constitutional convention of the state of Texas by ordinance, ratified in July, 1869; that sundry holders of land certificates other than those granted to said company have located and surveyed under their certificates great quantities of land within and forming a part of said reservation, and have made returns thereof to defendant, Kuechler, commissioner of the general land office, and have made application for patents therefor, and that sundry of the said patents have been signed by said Kuechler as commissioner, and his excellency Edmund J. Davis, as governor, notwithstanding the protest of said company, and said land commissioner and governor avow their intention to issue and execute patents for all certificates located and surveyed within said reservation, unless prevented and restrained therefrom by process of law. The prayer of the bill is that the said company may be confirmed in its rights to said reservation and grant, and that defendants may be restrained by injunction from further interference with or infringement of said land grant and reservation, and from issuing, or causing to be issued, any patent or grant of the lands of said reservation, except to said company, or to the holders of certificates issued to the same. This, in brief, is the case made by the bill. It is, in our opinion, difficult to imagine one more clearly demanding the equitable interference of this court, unless there be some technical obstacle to prevent. The act of incorporation and the land grant was a contract. It was between parties competent to contract, and made upon a valuable consideration. On the part of the company the contract has been in part performed at great expense to itself and great advantage to the state. To allow the state to recede from the contract would be to sanction a most unjust and oppressive proceeding.

In Fletcher v. Peck, 6 Cranch [10 U. S.] 137, it was held by the supreme court that a

grant of lands by the authority of the state to a citizen was a contract. It has been held by the same court that a legislative act declaring that certain lands which should be purchased for the Indians should not thereafter be subject to any tax constituted a contract which could not be rescinded by any subsequent legislative act. New Jersey v. Wilson, 7 Cranch [11 U. S.] 166. The 60th section of an act of the general assembly of Ohio, passed in 1845, declaring that each banking company organized under the act should semiannually set off to the state 6 per cent. of its net profits, which sum so set off shall be in lieu of all taxes to which the bank or its stockholders would otherwise be subject, was held to be a contract between the state and the bank. State Bank of Ohio v. Knoop, 16 How. [57 U. S.] 369; Jefferson Branch Bank v. Skelley, 1 Black [66 U. S.] 436; Ohio Life & Trust Co. v. Debolt, 16 How. [57 U. S.] 432; Mechanics' & Traders' Bank v. Debolt, 18 How. [59 U. S.] 380. In the case first cited the court says: "Every valuable privilege given by a charter, and which conduced to an acceptance of it, and an organization under it, is a contract, which cannot be changed by the legislature when the power to do so is not reserved by the charter." It is unnecessary to cite further authority to show that the charter and grant to the Memphis, El Paso and Pacific Railroad Company is a contract. Being a contract, its obligation cannot be impaired by the state. On this point the current of authorities is unbroken. Fletcher v. Peck, 6 Cranch [10 U. S.] 137; New Jersey v. Wilson, 7 Cranch [11 U. S.] 166; State Bank v. Knoop, 16 How. [57 U. S.] 369; Jefferson Branch Bank v. Skelley, 1 Black [66 U. S.] 436; Terrett v. Taylor, 9 Cranch [13 U. S.] 43; Bronson v. Kinzie, 1 How. [42 U. S.] 311; McCracken v. Hayward, 2 How. [43 U. S.] 608; Von Hoffman v. Quincy, 4 Wall. [71 U. S.] 535. And it is immaterial whether the law impairing the obligation of the contract is an ordinary act of legislation or is embodied in the organic law of the state. It would be a strange construction of this constitutional provision which would forbid a state to pass an act by its legislature, and yet allow the same provision to be permanently embedded in its jurisprudence, by the enactment of a constitutional convention. It is not a particular manner of doing the thing, but the thing itself which is prohibited. In the case of Dodge v. Woolsey, 18 How. [59 U. S.] 331, the act repealing that portion of the charter of the bank which prescribed the method and limit of taxation, was founded on an express provision of a new constitution of the state, adopted after the passage of the bank charter. But the supreme court held that the fact that the people had, in 1851, adopted a new constitution, in which it was declared that taxes should be imposed upon banks in a mode different from that prescribed by their charters could not release the state

from the obligations and duties imposed by the constitution of the United States.

In the case of Ohio Life & Trust Co. v. Debolt, 16 How. [57 U. S.] 429, Chief Justice Taney says: "Banks and other companies may be exempted by legislative contract, from their equal share of the taxes, under the belief that the corporation will prove a public benefit. Experience may prove that it is a public injury, yet if the contract was within the scope of the authority conferred by the constitution, it is like any other contract made by competent authority, binding upon the parties." Now can the people or their representatives by any act of theirs, impair the obligation of the contract without the consent of the other party to the same? We may assume then, that the state of Texas having entered into the contract with the railroad company set forth in the bill, no act or ordinance passed either by the legislative body or a constitutional convention can impair its obligation. In other words, the charter and grants are still in full force and effect, and binding upon the state, its officers and people.

The point is made by the demurrer, that this is in effect a suit against the state of Texas, and that an action against a state is prohibited by the eleventh amendment to the constitution of the United States. It would seem a sufficient reply to this, to say that the suit is not in fact a suit against the state. It may affect the interests of the state, but the state is not a party and therefore does not fall within the constitutional prohibition. If we are right in the views we have expressed as to the binding efficacy of the charter and grant to the railroad company, and the absolute nullity of any state law or constitution impairing its provisions, then the case stands thus: the defendants, officers of the state, are undertaking without authority of law to impair and deny the rights of the company, and to inflict irreparable mischief upon it, and threaten to continue this line of conduct. The law of the state granting the reservation of land to the company stands unimpaired and in full force; it is the expressed will of the state unrepealed and unchanged by any valid enactment, and these defendants without authority of law are undertaking to deprive the company of its rights under the law. The case of Dodge v. Woolsey, supra, was a bill in equity filed by Woolsey to restrain an officer of the state of Ohio from collecting taxes which he alleged to be due the state. The complainant complained that the bank in which he was a stockholder was not liable to pay the amount of taxes claimed by the officer. The officer was acting under what purported to be a law of the state prescribing his duties, and the taxes when collected, would in part be the property of the state. The state was therefore directly interested, and the officer had no personal interest in the controversy; yet in that

case the court held that a stockholder had a remedy against individuals in whatever character they professed to act, if the subject of complaint was an imputed violation of a corporate franchise, or the denial of a right growing out of it, for which there was not an adequate remedy at law. Suppose there had been no change in the policy of Texas respecting land grants to railroads; that in 1860, for instance, when this grant to the Memphis, El Paso and Pacific Railroad was admitted on all hands to be in full force, the governor and commissioner of the general land office had undertaken to locate certificates upon this railroad reservation, could there be a doubt that they might have been restrained at the instance of the company, and that a suit instituted for that purpose would not have been a suit against the state, but a suit against the officers? According to the view we take of this case, that is precisely the predicament in which the matter stands. The officers are acting without sanction of law, in violation of law, to the injury of the rights of this company; and while the state may derive advantage from the illegal acts of her officers, as Ohio would have done from the collection of any illegal tax, yet a suit against the officers cannot be, in any just sense, considered a suit against the state, nor falling within the prohibition of the federal constitution.

Numerous cases might be cited where the officers of a state have been restrained from acting by injunction in matters directly affecting the interest of the state, and the objection has never been sustained that such suit was an action against the state. Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738, was a bill in equity, praying for an injunction against the auditor of the state of Ohio to restrain him from the collection of a tax alleged to be illegal, and precisely the same objection was taken to the jurisdiction of the court as the one we are now considering, namely: that it was a suit against the state of Ohio, but the court said: "It may, we think, be laid down as a rule which admits of no exceptions, that in all cases where the jurisdiction depends on the party, it is the party named in the record; consequently, the eleventh amendment, which restrains the jurisdiction granted by the constitution over suits against states, is of necessity limited to those suits in which a state is a party on the record." The court held in that case, in substance, that the exemption of the state from suability was no objection to proceedings against its officers for executing an unconstitutional law. The authority just cited disposes of another ground of demurrer to the bill, namely, that the complainant is not competent to sue in this

court. According to the Case of Osborn, we must look to the record, and the record alone, to determine the question of jurisdiction. The bill avers the complainant to be a citizen of New York, and the defendants to be citizens of Texas. This brings the case within the provisions of the constitution and judiciary act.

In Dodge v. Woolsey, Woolsey, the complainant, was a stockholder in a bank organized under a law of Ohio, and Dodge, the defendant, was a citizen of Ohio. Yet, Woolsey being a citizen of Connecticut, the jurisdiction of the court was maintained.

It is further assigned, as ground of demurrer, that the creditors of the railroad company and the parties applying for patents to land within the reservation are not made parties to the bill. The creditors are neither necessary nor proper parties, because they are represented by the complainant, who is receiver. We do not think that the persons applying for patents are necessary parties to the bill. But if they were, it is a sufficient reply to the objection that they are not made parties, to cite the 48th equity rule: "When the parties on either side are very numerous and cannot, without manifest inconvenience and oppressive delays, be all brought before it, the court, in its discretion, may dispense with the making of all of these parties, and may proceed in the suit, having sufficient parties before it to represent all the adverse interests." The views now expressed appear to us to dispose of all the grounds of demurrer. We think the demurrer is not well taken on any of the grounds assigned. It is therefore overruled at defendant's costs.

[NOTE. This case was carried to the supreme court by the defendants, and the decision was affirmed in an opinion by Mr. Justice Swayne. 16 Wall. (83 U. S.) 203. Mr. Justice Hunt did not hear the argument or participate in the decision. Mr. Chief Justice Chase, and Mr. Justice Davis, dissented upon the point of the nonsuability of a state, taking the ground that on the face of the bill it was apparent that the state of Texas was arraigned as a defendant. The majority of the court, however, in expressly affirming the doctrines in Osborn v. Bank of U. S., 9 Wheat. (22 U. S.) 738, held that it was not proper to look beyond the record for a defendant, and that making a state officer a party does not necessarily make a state a party, although her law may prompt his action. The office and duties of a receiver were also discussed, and his power to sue in his own name fully affirmed.

[It was further held that the state of Texas herself, by plunging into the Civil War, had confessedly rendered it impossible for the company to fulfill the conditions of the charter in time, and "we are clear in our convictions that under the circumstances a reasonable time for performance had not elapsed when this bill was filed. That the act of incorporation and the land grant here in question were contracts, is too well settled in this court to require discussion."]