No. 10,774.

GRAND LODGE OF LOUISIANA OF FREE AND ACCEPTED MASONS VS. CITY OF NEW ORLEANS.

| 44 | 659 |
|----|-----|
| 52 | 228 |
| 52 | 234 |
| 52 | 235 |
| 52 | 1483 |
| 44 | 659 |
| 109 | 540 |
| 109 | 541 |
| 109 | 542 |
| 109 | 599 |

The constitutional provision relating to the exemption of property from taxation can not be avoided on the ground that it is retrospective.

The exemption was not a charter grant.

It was not a right removed from all legislative control.

The plain terms of the organic law prohibiting the exemption of property leased or used for corporate profit or income must be obeyed.

That part of the property occupied by plaintiff's order is exempt.

That part used or leased for corporate income or profit is subject to taxation.

From the assessed value of the whole property is deducted the value of that part which is not subject to taxation. The remainder is taxable.

A PPEAL from the Civil District Court for the Parish of Orleans. King, J.

---

J. Q. A. *Fellows* and *Buck, Dinkelspiel & Hart* for Plaintiffs and Appellees:

Masonic societies are charitable (eleemosynary) institutions within the meaning of Art. 207 of the Constitution. 34 An. 574.

The exemption of Act No. 225 of 1855 is a contract for a valid consideration between the State and the Grand Lodge F. and A. Masons, and that any attempt to tax the property so long as the conditions exist impairs the obligation of the contract. There is no necessity of looking for the consideration outside the objects for which the corporation was created. These objects are decreed by the Legislature to be beneficial. 15 Otto 362; 8 Wall. 430; Id. 439; 33 An. 850; 36 An. 396

A special statute exempting the property from taxation is not repealed by the Constitution of 1879. Whenever the sovereign exonerates it does so with munificence. 33 An. 850.

*W. B. Sommerville,* Assistant City Attorney, and *Carleton Hunt,* City Attorney, for Defendant and Appellant:

1. Act No. 225 of 1855, exempting the property of plaintiff from taxation, is not a part of plaintiff's charter, contained in Act No. 41 of 1816.

2. Act No. 225 is in the nature of a gratuity by the Legislature, which was subject to repeal at any time.

3. Property acquired by plaintiff in 1853 was not acquired with reference to the action of the State in 1855. And the exemption of plaintiff's property from taxation in the latter year can not be held to be the basis of a contract under 8 Wall. 430 and 105 U. S. 362.

4. Articles 203 and 207 of the Constitution of 1879 repeal Act No. 225 of 1855.

5. The opinion in City vs. Poydras Asylum, 33 An. 850, construing the terms of the Constitution of 1868, with reference to taxation, is not authority on the meaning and scope of Arts. 203 and 207 of the Constitution of 1879 on the same subject

6. Plaintiff's property falls within the proviso contained in Art. 207, and is, therefore, subject to taxation.

---

The opinion of the court was delivered by

WATKINS, J. The plaintiff enjoined the city from proceeding to seize and sell for delinquent taxes of the years 1888, 1889 and 1890 property of which it is the owner, and which is situated in the square bounded by St. Charles, Perdido, Union and Carondelet streets in the city of New Orleans, and known as the "Masonic Grand Lodge Hall," alleging its exemption from said taxes under the provisions of Act 225 of 1855.

It alleges that said exemption was granted by the State in consideration of the principles and objects of the institution of Freemasonry, which are charity and individual benevolence, and the establishment and promotion of charitable institutions; and in further consideration of the resolution that is contained in its act of purchase of said property in 1853, to the effect that the entire revenues of same, as soon as it is paid for, shall be devoted "to the relief of worthy distressed members of the order, their wives, children and families, and as a permanent charity fund," etc. And it avers that said exemption "became a contract between the State of Louisiana and the Grand Lodge * * * so long as the said property should be the property of the Grand Lodge and be occupied by it," and its revenues continue to be so applied.

It is further averred that each of those conditions now exists, and

has continuously existed since the enactment of said exemption law, and that the law under the color of which the defendant claims the right to levy and collect said taxes impairs the obligation of its protected contract in violation of Sec. 10 of Art. 1 of the Constitution of the United States, and is, therefore, null and void.

The city's answer is a general denial.

The contention of the plaintiff is that said exemption, under the circumstances related, had and has the force of a legislative contract which could not be repealed or impaired by subsequent constitutional provision or statutory enactment.

On the other hand, the contention of the defendant is, that Act 225 of 1855, relied upon by the plaintiff, conferred a mere gratuity, benefaction or munificence, which was subject to repeal or legislative recall at any time. That Art. 207 of the State Constitution repeals the Act of 1855 by imposing the additional restriction upon the exemption of the property of charitable institutions, that same " shall not be used or leased for purposes of private or corporate profit or income," and that proof of the property *not* being so used is a condition precedent to the allowance of the exemption.

This contention of the city is supplemented by the further one that, as in the *charter* granted to the plaintiff in 1816 there is no mention of the exemption of its property from taxation, and as the property in question was acquired by it two years *prior* to the enactment of the exemption act, and the exemption did not, therefore, constitute any part of the *consideration* thereof, said act does not contain the constituent elements of a *contract* which could be protected by the Federal Constitution from impairment.

And therefore the Act of 1855 became subject to repeal by the contrary provisions of Art. 207 of the Constitution of the State—there having been in existence no contract on the part of the State not to tax the plaintiff's property *at the time of its acquisition*, and there having been no covenant on the part of the State, stipulated in its charter, as to the exemption of property which it might *thereafter acquire.*

From the premises laid down on either side it is clear that the decision of this case must necessarily depend upon the existence *vel non* between the State and plaintiff, antecedent to the adoption of the Constitution of 1879, of a *contract* in respect to the exemption of its property from taxation.

It is conceded that the State granted a charter to the Grand Lodge
in 1816, and that it contained no mention of any exemption of its
property—present or prospective—from taxation. That the prop-
erty alleged to be exempt was purchased in 1853, and the exemption
statute was not enacted until the 15th of March, 1855. It is couched
in the following terms, viz.:

" *Be it enacted*, That the building situated at the corner of St.
Charles and Perdido streets, in the city of New Orleans, and known
as the hall of the Grand Lodge of F. and A. Masons of the State of
Louisiana, *shall be exempt from State and parish taxation. so long as
it is occupied as the Grand Lodge of the F. and A. Masons.*" Act 225
of 1855, p. 271.

In order to disclose a consideration for this alleged contract plain-
tiff introduced proof to show that the Grand Lodge is an eleemosyn-
ary institution "founded on the ancient usages of their society, the
principles of which are charity and universal benevolence."

But, while conceding the charitable objects and purposes of the
order, defendant's counsel contends that that is insufficient to main-
tain the exemption without further proof that said exempt property
has not been " *used or leased for purposes of private or corporate
profit or income.*" Const., Art. 207.

We are thus presented with a close question of constitutional law,
and to resolve it satisfactorily, recourse must be had to the decisions
of the Supreme Court as well as our own, and the opinions of text
writers.

First consulting Judge Cooley—whose views upon such questions
are always lucidly expressed and instructive—we find that after
having made a careful examination of the authorities, he has taken
the distinction which the city attorney suggests as the correct one
on which to place our decision.

That author has divided into two distinct topics the question here
presented as one and indivisible.

Treating of charters granted by a State to private corporations,
containing stipulations exempting corporate franchises and property
from taxation, he says, *such* a charter " is a contract between the
commonwealth and the corporators," and that such stipulations " are
irrepealable." Cooley on Taxation, Chap. III, p. 55.

But, in subsequently discussing exemptions of corporate franchises ·
and property, which are " granted on considerations of public pol-

icy," he says, same "may be recalled whenever the legislative view of public policy may be changed. To the individuals, corporations or associations benefited by them, they are to be regarded as favors or privileges merely, to continue during the pleasure of the sovereignty; and there can be no breach of faith—certainly no want of power—in terminating them at any time." Ibid., Chap. VI, pp. 145, 54.

See also cases illustrating this principle, which are cited on page 54.

As preliminary to this distinction the author says:

" An exception, however, is held to exist in case of an agreement by a State, entered into for a consideration, to refrain from exercising this power; that provision of the Federal Constitution which forbids the State passing laws which impair the obligation of contracts, applying as well to contracts by the State itself, as to those between individvals.      *      *      *      *      *      *      *      *

" A number of cases, for which this has been the precedent, are referred to in the note, but it is conceded in all of them that there must be a consideration to the State for the relinquishment, or the elements of a contract will be wanting." Id., p. 54.

A leading and conspicuous case, fairly illustrating the questions herein involved, is City of New Orleans vs. St. Anna's Asylum, 31 An. 292.

In that case it appears that the defendant asylum was created by a legislative charter granted in 1853, and it acquired in 1874 the property which was alleged to be exempt, and resisted the payment of taxes assessed thereon in 1876. In stating the question before it the court said:

" Under the settled jurisprudence there can be no doubt of the liability of the property in controversy, unless removed from the general rule by some exception.

" Such exemption is claimed as resulting from the charter of the defendant corporation, by which it is contended that a contract was created divesting the State of all power to repeal the exemption claimed."

After quoting the provisions of the charter which were relied upon as constituting a contract, the court proceeds to state:

· "The solitary question, therefore, is, was this exemption a contract *of such a nature* as to invest the corporation with such a right

as to remove it from all subsequent legislative control? We think not,'' etc.

Proceeding with the expression of the reasons which influenced this conclusion, they said:

"That a general power to repeal or modify a charter enters into the charter, and *pro tanto* divests it of the character of a contract, is now the settled opinion of the Supreme Court of the United States." (Italics are ours.)

Hence, the conclusion of the court was that the State had the authority, under the general power it possessed, of repealing or modifying the legislative charters of private corporations, to divest it of the character of a contract altogether.

That case was carried up, on writ of error, to the Supreme Court—Asylum vs. New Orleans, 105 U. S. 362—and it was therein reversed and the exemption sustained. Referring to the sixth section of the legislative charter of the asylum, which grants the exemption relied upon, the court said:

"The corporation filed an answer setting up the exemption from taxes contained in its charter, and claiming that it was a contract, and contended that the Constitution of 1868, and the statute passed in pursuance thereof, impaired the obligation of said contract, in violation of the tenth section of the first article of the Constitution of the United States."

After stating the grounds of the decision by our predecessors, as shown by our previous quotations, they proceeded to make an examination and give a synopsis of the cases cited and relied upon, and said:

"We think they do not apply to the case now under consideration. In the first place, the *Constitutions* of Michigan and Wisconsin, in which States those cases arose, reserved to their legislatures, respectively, the power to alter, amend and repeal charters of incorporation. In the next place, in those cases, the exemption granted was held to be *gratuitous* on the part of the State, no consideration passing therefor from the companies. *It was no part of their charters of incorporation, and, therefore, formed no consideration for their acceptance. Whereas, in the present case, the exemption was expressed in the charter itself, and was one of the inducements* offered for its acceptance and for making donations for the establishment of the institution."

Thereupon the court held that the imposition of the tax in question

against the property of the asylum " was not a legitimate exercise of the power of dissolution reserved in 'the Code " of Louisiana, and that the 118th article of the Constitution of 1868 was in violation of the Constitution of the United States in this respect.

We have quoted from this decision at great length, as it fully sanctions the distinction taken by Judge Cooley, and affirms the correctness of the principle on which the exemption is placed; that is to say, upon a provision of a legislative charter for the granting of which the exemption constitutes a consideration, and an inducement to the acceptance thereof.

Home of the Friendless vs. Rouse, 8 Wallace, 430, is an exactly parallel case.

From the statement of the case it appears that the Legislature of the State of Missouri granted a charter in 1853 to a private corporation, styled the Home of the Friendless, a charitable institution, and therein a stipulation was placed exempting all of its property from taxation, in general terms. That, under the provisions of a State Constitution adopted in 1865, the Legislature authorized the levy of a tax on the property of this corporation; and the corporation resisted payment on the ground of the impairment of its contract of exemption. This exemption was denied by the Missouri court, but the Supreme Court, on writ of error, held: " This charter is a contract between the State of Missouri and the corporators, that the property given for charitable uses specified in it shall, so long as it is applied to these uses, be exempt from taxation. It follows that any attempt to tax it impairs the obligation of the contract."

To the same effect are many other decisions of the Supreme Court, and we cite the following, viz.: University vs. People, 99 U. S. 309; Merritt vs. Philadelphia, etc., 18 Wall. 206; North Missouri R. R. Co. vs. Maguire, 20 Wall. 46; Erie R. R. Co. vs. Pennsylvania, 21 Wall. 497; The Delaware R. R. Tax, 18 Wall. 206; Miller vs. The State, 15 Wall. 478; The Binghampton Bridge, 3 Wall. 51.

As appertaining to this question quite a number of decisions, collateral thereto, may be appropriately cited.

For instance, in Edwards vs. Kearsay, 96 U. S. 595, what a contract was in a contitutional sense was defined to be " the agreement of minds, upon a sufficient consideration, that something specified shall be done or shall not be done."

In Fletcher vs. Peck, 6 Cranch 87, it was held that when a State

"law is in the nature of a contract, and rights have been vested under it, its repeal can not divest these rights."

It is conceded to be the settled interpretation of the Supreme Court, in reference to the contract clause of the Constitution of the United States, that a State Constitution is a law within the meaning thereof. Railroad Company vs. McClure, 10 Wall. 511; Gray vs. Davis, 1 Woods, 420; Green vs. Barry, 15 Wallace, 610; White vs. Hart, 13 Wallace, 647; Williams vs. Bruffy, 95 U. S. 184; Bank vs. Skelly, 1 Black, 436; Dodge vs. Woolsey, 18 Howard, 331.

But the decisions are quite as numerous and as pertinent which illustrate the correctness of the second proposition of Judge Cooley, and of this class the case of Rector, etc., of Christ Church vs. County of Philadelphia, 24 Howard, 300, may be taken as a leading and forcibly expressed opinion thereon.

In the statement of the case the court said: "In the year 1833 the Legislature of Pennsylvania passed an act which recited 'that Christ Church Hospital in the city of Philadelphia had for many years afforded an asylum to numerous poor and distressed widows, who would probably else have become a public charge; and it being represented that in consequence of the decay of the buildings of the hospital estate and the increasing burden of taxes its means are curtailed and its usefulness limited,' they enacted 'that the real property, including ground rents, now belonging and payable to Christ Church Hospital in the city of Philadelphia, so long as same shall continue to *belong* to the said hospital, shall be and remain free from taxes.'"

It further appears that in 1851 the Pennsylvania Legislature passed a law declaring "that all property, real and personal, belonging to any association or incorporated company which is now by law exempt from taxation other than that which is in the actual use and occupation of such association or incorporated company, and from which an income or revenue is derived by the owners thereof, shall hereafter be subject to taxation in the same manner and for the same purposes as other property is now by law taxable; and so much of any law as is hereby altered and supplied be and the same is hereby repealed."

The Pennsylvania court held that the exemption conferred by the statute of 1833 in favor of the Christ Church Hospital was partially repealed by the Act of 1851, and that an assessment of its property

in virtue thereof was not repugnant to the contract clause of the Federal Constitution.

On writ of error the plaintiff's contention was that the exemption of the act was perpetual, as the act itself was in effect a protected contract—just as plaintiff's contention is here.

The court, through Mr. Justice Campbell, says:

" This concession of the Legislature was spontaneous, and no service or duty or other remunerative condition was imposed on the corporation. It belongs to the class of laws denominated *privilegia favorabilia*. It attached only to such real property as belonged to the corporation and while it remained as its property; but it is not a necessary implication from these facts that the concession is perpetual or was designed to continue during the corporate existence *  * The inducements that moved the Legislature to concede the favor contained in the Act of 1833 are special, and were probably temporary in their operation *  *  * It is in the nature of such a privilege as the Act of 1833 confers that it exists *bene placitum*, and may be revoked at the pleasure of the sovereign.''

We have quoted from this case at length because there seems to be an exact parallel between it and the instant case, and for that reason the decision is peculiarly applicable and pertinent.

In Salt Company vs. East Saginaw, 13 Wall. 373, the court very clearly distinguished statutes which contain exemptions from taxation, the property of private corporations *merely*, and those which grant *charters* to such corporations and therein stipulate *continuing exemptions*.

The court in analyzing the statute of Michigan, which was therein involved, made this observation: '' A law dictated by public policy and the general good, etc., *  * such a law is not a contract, except to bestow the promised bounty upon those who earn it, *so long as the law remains unrepealed.   There is no pledge that it shall not be repealed at any time.*''

Again:  '' Charters granted to private corporations are held to be contracts.   Powers and privileges are conferred by the State, and corresponding duties and obligations are assumed by the corporation.''

In the case of Commonwealth vs. Bird, 12 Mass. 443; a similar principle is announced.   The same is true of the case of Brainard vs. The Town of Colchester, 31 Conn. 407.

But the whole question is very tersely put and decided in People vs. Roper, 35 N. Y. 629, the court declaring that:

"It is also true that, for adequate consideration, and in the exercise of its general authority, (the State) may invite investments in a particular description of property, for the benefit of the State, by stipulating for its exemption, in the hands of the holders, from assessment, as a subject of general taxation." * * *

But "it is never to be assumed, however, that the State has, even to this extent, fettered its power in the future, except upon clear and irresistible evidence that the engagement was in the nature of a private contract, as distinguished from a mere act of general legislation," etc.

After quoting at length the language of Chief Justice Marshall, in Providence Bank vs. Billings, 4 Wheaton, 429, the court said:

"For an irrepealable contract of such a nature, in the name of the body-politic, no authority is found, either in our legislative or our congressional precedents.

"*A contract in a corporate charter, for immunity in respect to a franchise conferred by government, is essentially distinct in its nature from a prospective absolution of the citizen from his future obligations to the State.*" (Italics ours.)

We are of opinion that the foregoing summary of authority, Federal and State, fully sanctions and substantiates the correctness of the distinction made by Judge Cooley between repealable and irrepealable statutory exemptions from corporate taxation.

We have carefully examined the decisions of the courts of last resort in many other States, as well as those of this court, and have found none which pronounce a contrary view. On the contrary, we find them in full accord therewith in every particular.

In the case of City of New Orleans vs. The Poydras Orphans' Asylum, 33 An. 850, in which the plaintiff's effort to collect taxes assessed against property of the defendant was resisted on the ground that same was exempt from taxation by various statutes enacted prior to the adoption of the Constitution of 1868, and which the plaintiff contended to have been repealed thereby, passed off on the ground that there was "no incompatibility between the exemption laws invoked and the Constitution of 1868;" and hence the exemption laws invoked were not repealed thereby, but remained in full force, and the tax was defeated.

Grand Lodge of Masons vs. City.

It is a fact fully attested by a comparison made of the exemption law of 1855, that is invoked by the plaintiff, and the pertinent provision of Art. 207 of the Constitution that the former is subjected by the latter to an additional and essential condition precedent, that is destructive of the claim of the plaintiff, unless the exemption be given the force of a protected contract.

The following extract from Art. 207 is relied upon, viz.:

" The following property shall be exempt from taxation, *and no other*, viz.: All public property, places of religious worship or burial, *all charitable institutions* * * *provided*, the property so exempted *be not used or leased for purposes of private or corporate profit or income.*"

In considering a germane question in State ex rel. Bartel vs. Board of Assessors, 34 An. 574, we held that the primary objects of the "Supreme Council of 33 Scotch Masonry," as appears from the evidence in the record and its legislative charter of 1870, are benevolence and charity, and, as such, was entitled to enjoy the prohibition contained in Art. 207 of the Constitution; but because the evidence disclosed that *part* of the buildings were rented for stores, and produced revenue, we held that that was obnoxious to the proviso of Art. 207 of the Constitution, and maintained the tax. See also State ex rel. Tulane Fund vs. Board; 35 An. 668.

The only condition imposed by the exemption act of 1855 was that the exempt property should continue to be " occupied as the Grand Lodge of the F. and A. Masons."

The proof shows that during the years in which the complained of assessments were made, a part of the ground floor of the exempt property was rented for stores, and that some of the rooms were rented for other like purposes; and that from these sources a large amount of corporate income had been realized. And, if the plaintiff does not possess a contract in the sense of the Federal Constitution, its property is clearly subject to taxation under the terms of the Bartel decision and Art. 207 of the Constitution.

And it is well worthy of remark that it is in line with many previous adjudications on this question, and, among the number, the following may be cited, viz.: City of New Orleans vs. The Congregation, etc., 15 An. 379; City of New Orleans vs. N. O. Mechanics, etc., 27 An. 436; New Orleans vs. People's Bank, 27 An. 646; New Orleans vs. Metropolitan Loan, etc., 27 An. 498; New Orleans vs. St.

Patrick's Hall, 28 An. 512; State vs. Bank, 23 An. 271; New Orleans vs. Lafayette Ins. Co., 28 An. 750; City vs. Carondelet Canal & Nav. Co., 36 An. 396.

On the whole, our conclusions are that Act 225 of 1855, which exempts from State and parish taxation the property of the plaintiff " so long as it is occupied as the Grand Lodge of the F. and A. Masons," does not contain a contract between the State and that corporation that is irrepealable, but that the exemption of the statute was granted on considerations of public policy independently of the consideration existing in its previously granted legislative charter, and subject to be recalled whenever the legislative view of public policy might be changed. That the provisions of that act are subordinate to those of Art. 207 of the Constitution of the State, providing that the property of charitable institutions shall be exempt from taxation if it " be not used or leased for purposes of private or corporate profit or income." That this constitutional provision, nor the statute under which the tax in question was levied, are amenable to the constitutional invalidity urged against them.

We very much regret that we have been constrained to subject to taxation the property of the plaintiff's meritorious association, but we have been unable, after careful research, to find any authority in our own decisions or those of the Supreme Court which holds that a bare statutory exemption, not contained in the legislative charter of a private corporation, nor in an amendment thereto, and not expressly defined to be a contract between the State and the corporators, is irrepealable, and not subject to recall at the option of the Legislature.

We find the authorities are unanimous to the contrary; but if we be in error in this view, the Supreme Court can set the decision right.

Plaintiff's injunction was, therefore, erroneously maintained and perpetuated.

It is therefore ordered and decreed that the judgment repealed from be reversed, and it is further ordered and decreed that the plaintiff's injunction be dissolved at its costs in both courts.

### On Application for a Rehearing.

Breaux, J. We will not restate the case; it is sufficient to say that the eleemosynary character of the institution is not controverted by defendant's counsel.

That this court has decided that Masonry is a charitable institution. 36 An. 397.

That defendant's propositions are:

That the act pleaded, as exempting the property of plaintiff from taxation, is not part of the plaintiffs' charter, nor an amendment, being a subsequent and independent act in the nature of a favor or privilege, subject to repeal at any time.

That the action of the State exempting the property subsequent to its purchase by plaintiff can not be held as the basis of a contract affecting the previously purchased property.

That Art. 207 of the Constitution repealed the special exempting act pleaded.

That the terms of the Constitution of 1868, with reference to exemption, are different from those of the Constitution of 1879.

The plaintiff in reply to these propositions earnestly contends that the questions have been decided in several cases, and that it is protected by the rule of *stare decisis*.

The St. Anna Asylum, a corporation created for charitable purposes by legislative charter, owned property, the revenues of which were applied to charitable purposes.

In a case which was tried against that institution it was decided that its revenues were not exempt from taxation.

On appeal to the Supreme Court of the United States the judgment was reversed. The court held that the exemption was made part of the charter, and was one of the inducements offered for its acceptance and for making donations for the establishment of the institution. Asylum vs. New Orleans, Otto, 105, p. 362.

Commencing with the leading Dartmouth College case, in which the Legislature assumed to remodel the charter of that college, the doctrine has been affirmed and reaffirmed, as held in our original opinion, that such a charter is a contract which the State grants in expectation of benefits to the public, which can not be amended or repealed to the prejudice of the rights accorded.

There is no analogy between the pending case and the St. Anna Asylum case further than that they are both charitable institutions, and that each leased part of it property.

In the ormer the act of exemption does not contain or import a consideration; in the latter the charter contained the elements of a contract protected by the Federal and State Constitutions.

The other cases referred to apply, and the questions involved have a bearing upon the issues in the case under consideration.

We are therefore compelled to meet the principles laid down in them and to express our inability to reach the same conclusion.

In City of New Orleans vs. Poydras Orphan Asylum, 33 An. 852, the defendant corporation was created by special act of February, 1817. It was exempted from taxation under special act of March, 1836.

The case being similar to the pending case, the special exemption did not secure a vested right.

The taxes claimed were for the year 1870, and the case was decided under the Constitution of 1868.

The court held that all the property, that yielding a revenue to, and that actually occupied by the Poydras Asylum, was exempt from the payment of the said tax.

The principle upon which the decision rests will be referred to later in our decision.

The question of immunity from taxation of charitable institutions, owning property other than that which they occupied, received consideration in the case of the New Orleans Female Orphan Asylum vs. Houston, Tax Collector, 37 An. 69; the taxes claimed were for certain years preceding 1879.

The charter did not contain a clause exempting its property from taxation. The exemption was secured under subsequent special legislation, as in the pending case.

Property yielding a revenue for the benefit of the asylum was decreed exempt from taxation.

We quote from the dissenting opinion in that case, of the late Justice Manning:

" The whole subject came under review in the Poydras Asylum case and was so extensively treated as to render a renewal of the discussion both unnecessary and tedious. I content myself with saying that the dissenting opinion of Mr. Justice Fenner in that case expresses my view, and for the reasons therein given I dissent from the majority opinion in this case.

" I recognize, however, the injustice that would be done by subjecting the plaintiff and other charitable institutions in *consimili casu* to the payment of taxes while the Poydras Asylum has been decreed exempt, and I shall in future adopt the ruling in that case as final."

In another case referred to, the City vs. Canal and Navigation Co.,

36 An. 397, the plaintiff claimed that the special statute exempting property of the defendant from taxation was repealed by the Constitution of 1879.

The court held:

"In the case of the Poydras Asylum, 33 An. 850, we had occasion to consider a similar question of exemption, and we came to the conclusion that the Constitution did not contemplate or produce the effect claimed."

The reasoning and the authorities collected in that case are applicable to the present one.

In a subsequent case, involving a question of the exemption of the said company, it was decided by this court that the said defendant had assumed certain obligations and had thereby acquired a vested right which made a repeal of its exemption void. City vs. Canal and Navigation Co., 44 An. —.

Two principles of interpretation and construction are set forth and followed in the above mentioned decisions:

1. That Art. 207 of the Constitution is prospective and not retrospective.

2. That a special law is not repealed by a subsequent general law.

We have been slow in following a line of discussion which has resulted in our adopting the views herein expressed and in laying down a general rule of exemption we think should be followed. We recognize the soundness of the principle that generally no statute should have a retrospective effect. But the sovereign has a power we can not disregard.

The limit of that power is expressed by the following:

" Retrospective laws which do not impair the obligation of contracts or partake of the character of *ex post facto* laws are not condemned or forbidden by any part of the Constitution of the United States." Satterlee vs. Mathewson, 2 Peters, 380.

In the pending case and those held to be analogous there is no contractual obligation and no vested right having the effect of withdrawing from the sovereign the power of repeal of special acts of exemption.

From Dwarris, p. 163, on the same subject, we quote:

" The rule of interpretation by which that construction of a statute is to be avoided which gives it a retrospective operation has little or no application in construing the organic law."

43*

All trustworthy authorities agree in maintaining the principle that a special exemption law may be repealed if no vested right exist.

If the principles laid down in the decisions referred to should prevail, it would not be possible to repeal any special act of exemption, although absolutely gratuitous.

The next question relates to the repeal of the special act by the subsequent general law.

The article (207 of the Constitution) contains a prohibition contrary to and irreconcilable with the special statute pleaded by plaintiff.

The plaintiff collects a revenue from part of the property; the proviso of said article prohibits the exemption of property used or leased for purposes of private or corporate profit, or income. The maxim, *leges posteriores priores contrarias abrogant* applies.

From one of the cases referred to by plaintiffs' counsel we quote:

"The old is abrogated by the new law only when the latter is couched in the negative or is so clearly repugnant as to imply a negative. 33 An. 850.

The proviso in question is irreconcilable and repugnant, and contains an absolute prohibition. It is direct, and became a part of every statute granting immunity from the payment of taxes in which no right is secured except that of exemption at the will of the sovereign.

The special act exempting the plaintiff is only ineffective in so far as use is made of its property for the purpose of corporate profit or income.

The part of plaintiffs' property not leased or used for corporate profit or income is exempt. In State ex rel. A. N. Bertel et al. vs. Board of Assessors, 34 An. 574, the assessment was reduced by deducting the value of the property exempt.

A decree will be entered having in view a similar reduction.

From the assessed values of the whole property described in plaintiffs' petition must be deducted that part which is not subject to taxation; leaving the remainder subject to taxation.

On the application for a rehearing an oral argument was heard.

The case having been reconsidered on this application our decree is amended without granting a rehearing and the case is remanded.

It is therefore ordered, adjudged and decreed that our previous decree be amended by recognizing the exemption of that part of the

property occupied by the grand and subordinate lodges of F. and A. Masons of Louisiana, and in other respects the demand is rejected.

The case is hereby remanded to the court *a qua*, with direction to hear evidence and ascertain what property is thus occupied, and what property is rented or used for purposes of private or corporate profit or income, and to pass upon and decide the relative values of that part of the property thus occupied by said Masons to that leased or used as aforesaid, *i. e.*, from the assessed value of the property, viz., $60,000, must be deducted the value of the property exempt as aforesaid.

Judgment for taxes will be rendered in compliance with law in the remainder of the assessment for taxes due annually for the years claimed.

The defendant to pay the cost of appeal and the cost of the lower court already incurred.