[Civil No. 505.    Filed April 1, 1897.]

[48 Pac. 291.]

## THE CONSOLIDATED NATIONAL BANK OF ARIZONA et al., Plaintiffs and Appellants, v. PIMA COUNTY et al., Defendants and Appellees.

1. NATIONAL BANKS—TAXES AND TAXATION—SHARES—REV. STATS. U. S., SEC. 5219, CITED AND CONSTRUED—TERRITORIAL ACT (LAWS ARIZ. 1893, ACT NO. 85, APPROVED APRIL 13, 1893), IN CONFORMITY THEREWITH, VALID.—The power to tax national bank associations as fixed by section 5219, *supra,* is confined and limited to the shares of such associations, and such shares may be included in the valuation of the personal property of the owners and holders of such shares. The same taxes may be imposed on such shares as are imposed by the authority of the state on other personal property. The limitations on the power to tax such shares are: 1. "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state," and 2. "That the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere." The statute of Arizona, *supra,* providing for the taxation of shares of national bank stock complies strictly with said act of Congress.

2. SAME—SAME—SAME—FAILURE TO TAX SHARES OF BUILDING AND LOAN ASSOCIATIONS—INDIVIDUAL MONEY-LENDERS—DOES NOT AFFECT VALIDITY OF TAX.—The failure of the Revenue Act of Arizona to provide for taxing the shares of building and loan associations and of money of private citizens loaning money does not make the tax in question illegal.

3. SAME—SAME—SAME—ASSESSMENT AS PERSONALTY—VALID—LAWS
ARIZ. 1893, ACT No. 85, APPROVED APRIL 13, 1893, CITED AND CON-
STRUED.—The assessment of shares of national bank stock as per-
sonal property, substantially in conformity with the law for the
assessment of other personal property, is valid, though the act of
April 13, 1893, specially prescribed a mode for the assessment of
such shares, the purpose of such latter act being to provide a mode
of ascertaining the ownership of such property, to the end that it
might be assessed.

BAKER, C. J., dissenting.

APPEAL from a judgment of the District Court of the
First Judicial District in and for the County of Pima.
Joseph D. Bethune, Judge.   Affirmed.

The facts are stated in the opinion.

Charles Weston Wright, for Appellants.

William M. Lovell, District Attorney, for Appellees.

ROUSE, J.—The Consolidated National Bank of Arizona is
a corporation duly organized under the laws of Congress as a
national bank, having its place of business at Tucson, Pima
County, Arizona, with a capital of fifty thousand dollars,
divided into five hundred shares, each of the par value of one
hundred dollars.   It is admitted that in 1893 the assessor of
Pima County attempted to assess the shares of said bank, and
listed and assessed one hundred of said shares to H. B. Tenney,
as follow, to wit: "H. B. Tenney, cashier Consolidated Na-
tional Bank, Tucson, personal property, value $10,000"; and
that he listed and assessed the other four hundred shares as
follows, to wit: "Unknown owners, personal property, value
$40,000.00."   Said lists were returned and passed upon and
equalized by the board of supervisors of said county, as a
board of equalization.   No one appeared before said board
on behalf of said Tenney or said bank to have said lists cor-
rected or altered, and they were duly entered on the tax-roll
for said year.   There was listed and assessed for said year as
the property of said Tenney other personal property in addi-
tion to said one hundred shares of bank stock, on which he
afterwards, in due time, paid the taxes.   Said bank also paid
the taxes on all property assessed to it.   Appellants, as plain-
tiffs, filed a joint complaint against appellees, as defendants,

for an injunction to restrain the collection of the taxes levied on said shares in said bank, and a temporary restraining order was made. Thereafter the case was tried, and the injunction was made perpetual as to the four hundred shares, and dissolved as to the one hundred shares assessed to Tenney. From that decision, plaintiffs appeal. No question as to a misjoinder of parties as plaintiffs was raised in the district court, and the right of said bank to join in the appeal to this court has not been disputed; hence those questions will not now be determined as independent questions. The judgment of the district court dissolving the injunction as to the one hundred shares of stock in said bank assessed to Tenney is the only question presented for our decision. We will not consider the points urged for and against the reversal of the judgment in the order in which they have been presented by the distinguished counsel for the respective parties.

By decisions of the supreme court of the United States too numerous to cite it has been determined that, without congressional authority, national banks cannot be taxed by the states. By section 5219 of the Revised Statutes of the United States the authority to tax national banks is given as follows: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations, located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes to the same extent, according to value, as other real property be taxed." The legislature must by law, determine and direct the manner and place of taxing the shares of national banking associations located within the state. There are only two restrictions placed by Congress on the power of the legislature of a

state in respect to the taxation of the shares of national bank-, ing associations. Congress has not seen fit to specify the form of the law to be enacted by the state, or to direct the form of the assessment, or to fix the penalties on those who may fail to pay the taxes on such property. These things have been left to the state in which said associations are located, with no other restrictions than those above mentioned. The state may impose the same penalties on those who hold shares in such banking associations for the collection of taxes thereon as it imposes for the non-payment of taxes on other property. *Palmer* v. *McMahon,* 133 U. S. 660, 10 Sup. Ct. Rep. 324; *Mercantile Bank* v. *New York,* 121 U. S. 138, 7 Sup. Ct. Rep. 826. It will be observed that the power to tax national bank associations is confined and limited to the shares of such associations, and that such shares may be included in the valuation of the personal property of the owners or holders of such shares. It will further be observed that the same taxes may be imposed on such shares as is imposed by authority of the state on other personal property. Rev. Stats. U. S., sec. 5219. The limitations imposed on the power to tax the shares of national bank associations are: 1. "That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state"; and 2. "That the shares of any national banking association, owned by non-residents of any state, shall be taxed in the city or town where the bank is located, and not elsewhere." The main purpose of Congress in fixing limits to state taxation on investments in shares of national banks, as above mentioned, was to render it impossible for the state, in levying such tax, to create and foster an unequal · and unfriendly competition, by favoring institutions or individuals carrying on a similar business, and operations of like character; that is, to prevent unjust discrimination against those who have money invested in the shares of national banks. *Mercantile Bank* v. *New York,* 121 U. S. 138, 7 Sup. Ct. Rep. 826; *People* v. *Commissioners of Taxes,* 4 Wall. 244; *Palmer* v. *McMahon,* 133 U. S. 660, 10 Sup. Ct. Rep. 324.

The law of the territory of Arizona with reference to the taxes involved in this case was approved April 13, 1893, (Laws 1893, Act No. 85,) and the first section thereof is as follows, viz.: "That hereafter all the shares of stock of every bank or

banking association, whether organized under authority of any law of this territory or any other state or territory or any act of Congress of the United States, and all of the capital stock of every person, association or other corporation whatever, engaged in the business of banking, buying and selling exchange, and receiving deposits, shall be assessed and taxed in the county where such bank or banking association or corporation is located for the transaction of business; provided, however, that the shares of stock of all banks, including national banks, shall not be taxed at a greater rate than is assessed upon any other moneyed capital in the hands of individual citizens of the territory, and that the shares of stock of any banking association, owned by non-residents of the territory, shall be taxed in the county where the bank is located, and not elsewhere.'' It will be observed that said section of the territorial law complies strictly with the said act of Congress, and subjects the owners and holders of shares in national bank associations to the payment of taxes only, as the owners and holders of shares in other banks and moneyed institutions and the capital of individuals are taxed. The supreme court of the United States, in construing section 5219 of the Revised Statutes of the United States, has said: ''The restriction therein imposed is equality of assessment with other moneyed capital; not with other property generally, but with that property which passes under the description of moneyed capital.'' *Talbott* v. *Silver Bow Co.*, 139 U. S. 438, 11 Sup. Ct. Rep. 594. The term ''moneyed capital,'' as used in said section, is defined to embrace ''capital employed in national banks, and capital employed by individuals, when the object of their business is the making of profit by the use of their moneyed capital as money; as in banking, as that business is defined.'' *Palmer* v. *McMahon*, 133 U. S. 660, 10 Sup. Ct. Rep. 324.

On the trial evidence was admitted establishing the fact that a certain building and loan association, duly organized and incorporated, was doing business in Tucson, Arizona, having a large capital, divided and represented by a large number of shares; and the nature of the business conducted by said corporation was to loan to its shareholders the money of said corporation. It was shown in evidence that said corporation was not assessed, excepting upon a small portion of real estate owned by it, and on some inconsiderable portion of per-

sonal property in the shape of office furniture. It is further contended in argument that there are large sums of money belonging to private individuals,—that is, loaned out,—and that the owners thereof are not taxed. The failure of the law to provide for taxing the shares of said building and loan association and similar associations, and of the money of private individuals referred to, is urged against the tax on the shares of stock in the national bank involved in this case, and against the validity of said territorial law. With reference to those matters, the supreme court of the United States, in construing section 5219 of the Revised Statutes of the United States, has said: ''Obviously, by this section, as interpreted by the decisions of this court, the limitation applies solely to a parallel with the individual or corporation whose capital in money is used with a view of compensation for the use of money.'' *Talbott* v. *Silver Bow Co.*, 139 U. S. 438, 11 Sup. Ct. Rep. 594; *Palmer* v. *McMahon, supra.* Said building and loan association cannot be compared with a banking association. The exemption or rather the failure to tax the shares of the said building and loan association does not make the tax in question illegal. *Mercantile Bank* v. *New York*, 121 U. S. 138, 7 Sup. Ct. Rep. 826.

On the trial proof was made that the assessor of Pima County, by letter, demanded of Tenney a list of his shares in the banking association; that receiving no reply from Tenney, said assessor assessed Tenney's personal property, and with it personal property valued at ten thousand dollars. It was conceded that said ten thousand dollars was one hundred shares of said Consolidated National Bank of Arizona, each share of the par value of one hundred dollars. Said list of the property of Tenney was returned by the assessor, and was passed upon by the board of supervisors of said county, as a board of equalization. Tenney did not appear before said board in person or otherwise to urge objections to or corrections of said assessment. That Tenney was the owner of said one hundred shares of said banking association, and that they were of the value, in the aggregate, of ten thousand dollars at the time of the assessment was not disputed on the trial, and is not controverted now. The course pursued by the said assessor in assessing said shares was substantially the same as prescribed by law for the assessment of other per-

sonal property. Appellants contend that the assessment should have been made differently; that the act of the legislative assembly of Arizona of April 13, 1893, prescribed a mode by which said assessment should have been made, and, as that mode was not pursued, the assessment was illegal and the tax void. The act of Congress (Rev. Stats. U. S., sec. 5219) in effect makes the shares of national banks personal property, by declaring that "nothing therein shall prevent such shares from being included in the valuation of the personal property of the holders of such shares." By paragraph 2631 of the Revised Statutes of Arizona real and personal property are defined. The definition of real estate, as therein given, is that by which said term is generally defined. Personal property is therein defined to include all other property not embraced in the said definition of real estate. It is further provided therein that, for the purpose of taxation, the person in possession of personal property is deemed to be the owner thereof. By paragraph 2640 it is made the duty of the assessor, between certain dates mentioned, to ascertain all the property in his county subject to taxation, and the owners thereof, and the cash value thereof; to assess the property to the owners or holders thereof. It is also, by said paragraph, made the duty of the officers, etc., of corporations, to furnish a descriptive list of the property under their control to the assessor, on demand. By paragraph 2641 it is made the duty of all persons, including officers of corporations, whether they be requested by the assessor to do so or not, to make out under oath, and deliver to the assessor, a list of the property they own or which is under their control. Said paragraph is as follows: "It shall be the duty of every person owning, or having charge or under his control, property in the territory subject to taxation, and as in this act provided, to make out and deliver to the assessor, between the first Monday in March and the first Monday in June of each year, a correct list of the same as required by law, whether he shall receive from the assessor a demand or notice to do so or not; and every assessment made against property subject to taxation shall be valid whether such notice was received or not." The evidence in this case demonstrates the fact that, as to the said one hundred shares of the stock of said banking association, the assessor pursued the course prescribed for the assessment of ordinary.

personal property; that the assessment was duly returned and equalized by the board of equalization; that Tenney did not appear before said board to have the assessment corrected; that on the trial he did not dispute the fact that he owned that number of shares, or that they were not of the value, in the aggregate, of the amount for which they were assessed. If they were the same as ordinary property, the tax was valid, and could not be questioned, except in a proceeding instituted for that purpose on some one of the well-defined grounds for equitable relief.

But it is contended by appellants that by the act of April 13, 1893, a special mode is provided for the assessment of the stock of banking associations. Section 3 of said act is cited in support of said contention. It is as follows: "Upon the demand of the assessor, the president, cashier, or other officer in charge of an incorporated bank association, person or persons, shall make out and deliver to such assessor . . . a statement showing the name and residence of each stockholder therein, . . . and the amount of stock held by him. . . . If any such person, officer, or agent shall refuse to make out and deliver such statement, . . . he shall be personally liable to the county for the whole amount of taxes which should be paid upon such stock; and it shall be the duty of said assessor or tax-collector, as the case may be, to collect the same as other county and territorial taxes are collected." The above section, excepting as to the penalty to be imposed upon the officers and persons therein designated, is practically a rescript of paragraph 2641 of the Revised Statutes of Arizona. The evident purpose in view was to provide a mode of ascertaining the ownership of such property, to the end that it might be assessed. In section 2 of said act of April 13, 1893, there is the following: "Bank stock shall be entered in the name of the holders of the several shares thereof respectively." By said section the obligation is imposed upon the assessor to do what is therein required. If said section 3 was intended to be the only mode to be pursued in making the assessment of the stock in banking associations, on refusal of the officers and persons therein mentioned to furnish a list, etc., thereof, no tax could be collected, for there would be no way to fix the amount of taxes due; hence the officers therein mentioned could not collect any penalty, for there would be no penalty fixed, and no way of

fixing such taxes to be collected. We conclude that, under said act of April 13, 1893, shares of stock in national banks, as well as other banks and banking corporations, are subject to taxation, and the assessment of such shares in such banking associations can be made without reference to the provisions of said section 3, and that an assessment made thereon as if said shares of stock were ordinary personal property would be valid. Hence we hold that the assessment in this case is valid.

On the trial an agreed statement of facts was made, to the effect that the tax-collector of Pima County was about to seize and sell the said one hundred shares of the stock of said banking association, and that he would do so if not restrained. We have already discovered from the evidence that said shares were not specifically described; that is, that they were not described so that they could be known from other shares of said association. If we should construe this agreement literally, we would be compelled to hold that said injunction would have to be sustained; but we think said agreed statement of facts, taken in connection with all other facts in the case, must be construed to mean that the collector would proceed to collect, in the way pointed out by law, the amount of taxes due on said shares, as fixed by said assessment, as so much due from the owner thereof, in the way said amount would be collected if it was due on other ordinary personal property, and not that said officer was about to seize the specific shares. The provisions of said act of April 13, 1893, make the shares of all banking associations taxable in the same way. It is a valid act. There being no evidence that the shares of stock of any similar association were exempt from taxation (*Bank* v. *Ayers*, 160 U. S. 660, 16 Sup. Ct. Rep. 412), the judgment of the district court must be affirmed, notwithstanding the contention of counsel for appellants that part of the capital of said banking association was invested in United States and other bonds not taxable (*Van Allen* v. *Assessor*, 3 Wall. 573; *Bradley* v. *People*, 4 Wall. 459; *People* v. *New York County Commissioners of Taxes*, 4 Wall. 244; *Palmer* v. *McMahon*, 133 U. S. 660, 10 Sup. Ct. Rep. 324), and notwithstanding the fact that the taxation of corporations other than banks is made under a different system (*Mercantile Bank* v. *New York*, 121 U. S. 138, 7 Sup. Ct. Rep. 826) ; and it is so ordered.

HAWKINS, J.—I concur in the affirmance of the foregoing action. I think, however, that the assessor should have stated in his assessment that the personal property assessed was "100 shares of the capital stock in the Consolidated National Bank of Tucson, Arizona, value one hundred dollars per share, total value ten thousand dollars," if this was the correct valuation. But there being no question in the court below that this was the property, and that Tenney was the owner of the same, and the taxes thereon were neither paid nor tendered, the action of the court in dissolving the injunction was proper. No person has a right to an injunction to restrain the collection of taxes upon any kind of property not expressly exempt from taxation without first having paid the proper amount due as taxes on the same, or paying into the court the amount of such taxes. Shares in a national bank are not assessable to the national bank, for the reason that they are not owned by the bank, and would interfere with the operations of a national agency. The shares, however, are owned by individuals, and the assessment on the same should be made to the individual owners of such shares.

BAKER, C. J.—I dissent. The territorial law is invalid, because it suffers the taxation of the shares of a national bank, and permits the taxation of the capital stock only of other banks or banking corporations. There is a manifest distinction between the shares of a corporation and its capital stock for taxation purposes, and this law is therefore, in my opinion, discriminating and unjust. *Van Allen* v. *Assessors,* 3 Wall. 573-581; *Bradley* v. *People,* 4 Wall. 459. Furthermore, paragraph 2633 of the Revised Statutes of this territory exempts the shares of all corporations from taxation, while the present statute under consideration suffers the taxation of the shares of some banking corporations only. The revenue law is therefore not uniform and equal, but is discriminating and unequal.