## PALMER *v.* McMAHON.

ERROR TO THE COURT OF COMMON PLEAS FOR THE CITY AND COUNTY OF NEW YORK.

No. 145. Submitted January 24, 1890. — Decided March 3, 1890.

P. was a resident in the city of New York and a stockholder in a national bank situated there. In 1881 his shares in the bank were assessed at a valuation of $247,635. This valuation was entered by the tax commissioners in the annual Record of Valuations for 1881, a book which was kept open for public inspection from the second Monday of January, 1881, to May 1, 1881, and a public advertisement thereof was made. Before April, 1881, P. appeared before the commissioners and claimed a reduction, and they reduced the valuation to $190,635. On May 1st the assessment rolls were prepared from that record, with the valuation of

P.'s shares at the latter sum, and he was assessed at that valuation. The tax rolls were completed on this basis, and notice was given that they would be open for inspection. P.'s tax, upon the reduced valuation, was $4994.63. The tax rolls were confirmed, and due notice was given to all taxpayers that the taxes were due and payable. P. paid $1310 of this tax, but declined to pay the further sum of $3684.63. The collector of taxes thereupon proceeded against him in the Court of Common Pleas for the city and county of New York, under c. 230 of the laws of New York of 1843, for the enforcement of the payment of the sum remaining due. He appeared and answered, and judgment was given against him, which judgment was affirmed by the Court of Appeals, and the case was remanded to the Court of Common Pleas. A writ of error was sued out from this court to review that judgment; *Held,*

(1) That this court was bound by the decision of the Court of Appeals as to P.'s failure to comply with the state statute in relation to the method of procedure, form of assessment, etc.;

(2) That the assessment was not made in contravention of the Constitution or laws of the United States, and was, therefore, not void for that reason; .

(3) That the mode provided by the statute of New York for the collection of the tax was " due process of law," and did not deprive P. of the equal protection of the laws; but that it was a purely executive process to collect the tax after the liability of the party was finally fixed.

When a law provides a mode for confirming or contesting an assessment for taxation, with appropriate notice to the person charged, the assessment cannot be said to deprive the owner of his property without due process of law.

Assessors should give all persons taxed an opportunity to be heard; but it is sufficient if the law provides for a board of revision, authorized to hear complaints respecting the justice of the assessment, and prescribes the time during which, and the place where, such complaints may be made.

THIS was a writ of error to the Court of Common Pleas for the city and county of New York to review a judgment and order finding Francis A. Palmer guilty of misconduct in neglecting to pay personal taxes assessed, imposed and confirmed against him for the year 1881, and ordering that he stand committed until he should have paid the amount of the said taxes, with interest and costs, unless the court should see fit sooner to discharge him, which judgment and order was rendered in a proceeding brought under the provisions of chapter 230 of the laws of the State of New York of 1843, Art. 2, §§ 12 and 13, which sections are as follows:

"§ 12. In case of the refusal or neglect of any person to pay any tax imposed on him for personal property, if there be no goods or chattels in his possession upon which the same may be levied by distress and sale according to law, and if the property assessed shall exceed the sum of one thousand dollars, the said receiver, if he has reason to believe that the person taxed has debts, credits, choses in action, or other personal property, not taxed elsewhere in this state, and upon which levy cannot be made according to law, may thereupon in his discretion make application, within one year, to the Court of Common Pleas of the county, or the Supreme Court, to enforce the payment of such tax.

"§ 13. The court may impose a fine for the misconduct mentioned in the next preceding section, sufficient in amount for the payment of the tax assessed, and of the costs and expenses of the proceedings authorized by this act to enforce such payment, or to punish such misconduct; and the amount of such tax shall be paid out of such fine to the said receiver, who shall pay the same in like manner as the tax was required to be paid; and costs and expenses of such proceedings shall be paid out of such fine to the said receiver who made the application to enforce the payment of the tax."

The record showed that on the 17th day of April, 1882, Martin T. McMahon, the receiver of taxes of the city of New York, filed a petition against Francis A. Palmer in the Court of Common Pleas, stating that in the year 1881 Mr. Palmer was a resident of the twenty-first ward in the city of New York and a stockholder in the National Broadway Bank, located in the third ward of said city; that the shares of stock in said bank owned by Mr. Palmer were duly assessed for the year 1881 at the valuation of $247,635, which valuation was entered by the tax commissioners in "The Annual Record of the Assessed Valuation of Real and Personal Estate" for the year 1881, which record was open for examination and correction from the second Monday of January until the first day of May, 1881, and the fact that the books were so open was duly advertised; that before April 30, 1881, Palmer applied for a reduction of the valuation, and it was reduced by

the commissioners to the sum of $190,635; that on May 1, 1881, the assessment rolls were prepared from the books, upon which his name was entered, with an assessment against him for his shares at the valuation last mentioned, which rolls were duly certified to the board of aldermen of the city of New York, and immediately afterwards the tax commissioners gave public notice that the tax rolls had been completed and delivered to the board, and would be open to public inspection for the period of fifteen days from the date of the notice, which notice was duly published in several newspapers in the city of New York for fifteen days consecutively, commencing July 5, 1881; that thereafter the tax upon such valuation of Palmer's shares of stock was estimated and set down upon said roll at the sum of $4994.63, and on October 13, 1881, was duly confirmed by the board of aldermen, and corrected assessment rolls showing the amount of said tax were delivered to McMahon, as receiver of taxes, with a warrant for the collection thereof; that notice was duly published in twelve New York newspapers that said assessment rolls had been delivered and that the taxes were due and payable thereon; that thereafter notice was again published in twelve newspapers that unless the taxes were paid the receiver would proceed to collect them according to law; and a fourth notice was likewise published requiring payment; that Palmer had neglected to pay the sum of $3684.63 of the tax assessed against him; that subsequently to the 15th of January, 1882, a warrant was issued by the receiver to a marshal of the city for the collection of said tax, which was returned unsatisfied, except as to the sum of $1310, after demand of payment from Palmer, which was refused as to $3684.63; that there were no goods or chattels in Palmer's possession upon which said tax might be levied by distress and sale; that one year had not elapsed since said refusal or the return of the warrant; and that the receiver had reason to believe that Palmer had debts, credits, choses in action, or other personal property, not taxed elsewhere in the State of New York, upon which levy could not be made according to law; and he applied for the enforcement of payment of the tax pursuant to the statute.

Defendant Palmer was ordered, upon the foregoing petition, to show cause why he should not be punished for his misconduct in neglecting and refusing to pay said personal property tax, and he appeared and interposed an affidavit, in which he set up various matters in resistance to the order, and among other things insisted that his shares of stock were not lawfully assessed for the year 1881, for reasons stated in a demand theretofore served upon the commissioners of taxes in the city of New York, of which a copy was attached to the affidavit, dated April 25, 1881, and whereby the tax commissioners were requested to strike from the record the names of all the shareholders in said bank upon various grounds, and in case the foregoing demand was refused, further demanding that the assessed value of each share, which had been fixed by the commissioners at $45, be reduced to $10, by deducting the value of United States bonds held by the bank, and in the event of a refusal, that the valuation of each share should be reduced to the amount of $27, being sixty per cent of the assessed value of each share of stock exclusive of real estate. In support of the petition affidavits of the tax commissioners were presented to the court. It appeared that a deduction of $57,000 on account of debts due by Palmer had been made from the original valuation of the shares, on his application. The Court of Common Pleas thereupon made the order complained of, an opinion being given by Van Brunt, J., 11 Daly, 214, in which all the objections made by Palmer were carefully considered and overruled. From this order an appeal was taken to the general term of the Court of Common Pleas, by which said order was affirmed, the opinion of the court being delivered by Beach, J., and reported in 12 Daly, 362. From the judgment of the general term an appeal was taken to the Court of Appeals of the State of New York, the judgment affirmed, and the proceedings remitted to the Court of Common Pleas. The opinion of the Court of Appeals by Ruger, C. J., is to be found in 102 N. Y. 176, and is quoted from with approval by this court in *Mercantile Bank* v. *New York*, 121 U. S. 138, 158. To the judgment of the Court of Common Pleas this writ of error was sued out.

*Mr. William Hildreth Field* and *Mr. William H. Clark* for plaintiff in error.

*Mr. David J. Dean* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

We are bound by the decision of the Court of Appeals of the State of New York adversely to the plaintiff in error, as to failure to comply with the state statute in relation to the method of procedure, form of assessment, oath of assessors, etc., in respect to which it may be further remarked that the attack in this case is in its nature collateral. *Stanley* v. *Supervisors*, 121 U. S. 535; *Supervisors* v. *Stanley*, 105 U. S. 305. We proceed to examine, therefore, whether the assessment was invalid because the statute under which it was laid contravened the Constitution or laws of the United States, and whether the proceedings authorized by chapter 230 of the laws of 1843, operated to deprive the citizen of liberty or property without due process of law.

Section 5219 of the Revised Statutes, Title LXII, "National Banks," reads as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value as other real property is taxed."

Chapter 596 of the laws of New York of 1880, is entitled "An act to provide for the taxation of banks and of moneyed capital engaged in the business of banking, receiving deposits or otherwise," and its third section reads thus:

"The stockholders in every bank, banking association or trust company, organized under the authority of this State, or of the United States, shall be assessed and taxed on the value of their shares of stock therein; said shares shall be included in the valuation of the personal property of such stockholders in the assessment of taxes at the place, city, town or ward where such bank, banking association or trust company is located, and not elsewhere, whether the said stockholder reside in said place, city, town or ward, or not, but in the assessment of said shares, each stockholder shall be allowed all the deductions, and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this State, and the assessment or taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this State. In making such assessment there shall also be deducted from the value of such shares such sum as is in the same proportion to such value as is the assessed value of the real estate of the bank, banking association or trust company, and in which any portion of their capital is invested, in which said shares are held, to the whole amount of the capital stock of such bank, banking association or trust company; nothing herein contained shall be held or construed to exempt the real estate of banks, banking associations or trust companies from either state, county or municipal taxes; but the same shall be subject to state, county, municipal and other taxation, to the same extent and rate, and in the same manner, according to its value as other real estate is taxed." 1 Laws of New York of 1880, pp. 888, 889.

We have decided that so much of the capital of national and state banks as is invested in United States securities cannot be subjected to state taxation, *People* v. *Commissioners of Taxes for New York*, 2 Black, 620; *Bank Tax Case*, 2 Wall. 200; but that shares of bank stock may be taxed in the hands

of their individual owners at their actual instead of their par value, *People* v. *Commissioners of Taxes &c.*, 94 U. S. 415; *Hepburn* v. *School Directors*, 23 Wall. 480; without regard to the fact that part or the whole of the capital of the corporation might be so invested; *Van Allen* v. *Assessors*, 3 Wall. 573; *Bradley* v. *People*, 4 Wall. 459; *People* v. *Commissioners*, 4 Wall. 244; and that under acts permitting the deduction of debts from the value of all a person's taxable property, such deduction must be permitted from the value of such shares, *People* v. *Weaver*, 100 U. S. 539, 546; but that a statute is not void because it does not provide for a deduction, nor is the assessment void if deductions are not made, but voidable only. *Supervisors* v. *Stanley*, 105 U. S. 305. We have also held that individual instances of omission or undervaluation cannot be relied on to invalidate an assessment, *Supervisors* v. *Stanley, supra;* and that because a state statute does not provide for the taxation of shares in corporations other than banks, it does not follow that the tax on moneyed capital invested in bank shares is at a greater rate than that of the moneyed capital of individual citizens invested in other corporations, nor are the shareholders in national banks discriminated against, because the taxation of such other corporations is arrived at under a separate system. *Mercantile Bank* v. *New York*, 121 U. S. 138. In this last case the assessment was made in pursuance of section 312 of an act of the legislature of the State of New York, passed July 1, 1882, entitled "An act to revise the statutes of this State relating to banks, banking and trust companies," which section is identical with section 3 of the act of 1880, except that trust companies are omitted in the act of 1882, and a provision in relation to notice is added at the end of the section. The court held as follows: "The main purpose of Congress in fixing limits to state taxation on investments in shares of national banks was, to render it impossible for the State, in levying such a tax to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business, and operations and investments of like character. The term 'moneyed capital,' as used in Rev. Stat. § 5219, respecting state taxation of

shares in national banks, embraces capital employed in national banks, and capital employed by individuals when the object of their business is the making of profit by the use of their moneyed capital as money — as in banking as that business is defined in the opinion of the court; but it does not include moneyed capital in the hands of a corporation, even if its business be such as to make its shares moneyed capital when in the hands of individuals, or if it invests its capital in securities payable in money. The mode of taxation adopted by the State of New York in reference to its corporations, excluding trust companies and savings banks, does not operate in such a way as to make the tax assessed upon shares of national banks at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens." The conclusions there announced and the reasoning by which they are supported, are decisive in the disposition of the errors assigned on behalf of the plaintiff in error, on the first branch of this case. The assessment was not void because in contravention of the Constitution or laws of the United States.

But it is argued that chapter 230 of the laws of New York of 1843 is unconstitutional, as depriving the plaintiff in error of liberty and property without due process of law, and of the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States. That amendment provides, that no State "shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It is insisted that Palmer had no notice and no opportunity to be heard or to confront or cross-examine the witnesses for the taxing authorities or to subpœna witnesses in his own behalf; and had not otherwise the protection afforded in a judicial trial upon the merits. The phrase "due process of law" does not necessarily mean a judicial proceeding. "The nation from whom we inherit the phrase 'due process of law,'" said this court, speaking by Mr. Justice Miller, "has never relied upon the courts of justice for the

collection of her taxes, though she passed through a successful revolution in resistance to unlawful taxation." *McMillen* v. *Anderson*, 95 U. S. 37, 41.

The power to tax belongs exclusively to the legislative branch of the government, and when the law provides for a mode of confirming or contesting the charge imposed, with such notice to the person as is appropriate to the nature of the case, the assessment cannot be said to deprive the owner of his property without due process of law. *Spencer* v. *Merchant*, 125 U. S. 345; *Walston* v. *Nevin*, 128 U. S. 578. The imposition of taxes is in its nature administrative and not judicial, but assessors exercise *quasi* judicial powers in arriving at the value, and opportunity to be heard should be and is given under all just systems of taxation according to value.

It is enough, however, if the law provides for a board of revision authorized to hear complaints respecting the justice of the assessment, and prescribes the time during which and the place where such complaints may be made. *Hagar* v. *Reclamation District*, 111 U. S. 701, 710.

The law of New York gave opportunity for objection before the tax commissioners, Laws of New York, 1859, c. 302, § 10, p. 681, and the plaintiff in error appeared and obtained a large deduction from the original valuation. If dissatisfied with the final action of the commissioners, he could have had that action reviewed on *certiorari*. Laws of New York, 1859, c. 302, § 20, p. 684; *People* v. *Commissioners*, 4 Wall. 244. But he did not avail himself of this remedy.

The proceeding here was purely an executive process to collect the tax after the liability of the party was finally fixed.

Collection by distress and seizure of person is of very ancient date, *Murray's Lessee* v. *Hoboken Land Co.*, 18 How. 272; and counsel for defendant in error cites many English statutes, commencing with the twelfth year of Henry VII, c. 13, which in their essential features resemble the New York law upon the subject, one in 6 Henry VIII, c. 26, being strikingly like it. 2 Statutes of the Realm, 644; 3 Ib. 156, 230, 516, 812; 4 Ib. 176, 334, 385, 744, 991, 1108, 1247; 5

Ib. 9, 700; 7 Ib. 567. Under the act of 1843 commitment is not resorted to until other means of collection have failed and then only upon a showing of property possessed, not accessible to levy, but enabling the owner to pay if he chooses, this constituting such misconduct as justifies the order. That law had been in existence for more than forty years at the time of this proceeding. We do not regard the collection in this way, founded on necessity and so long recognized by the State of New York as to be justifiably resorted to under the circumstances detailed in the act, and operating alike on all persons and property similarly situated, as within the inhibitions of the Fourteenth Amendment.

The judgment is

*Affirmed.*

MR. JUSTICE BLATCHFORD did not take any part in the decision of this case.