## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CITY OF RICHMOND V. MERCHANTS NATIONAL BANK.

### March 13, 1919.

1. TAXATION—*Correction of Assessment—Banks—Parties.*—While a proceeding to correct an erroneous assessment against the capital stock, surplus and undivided profits of a bank should have been in the name of the stockholders and not in the name of the bank, as the assessment, in essence, is against the stockholders, the error in procedure is cured by a consent order, *nunc pro tunc,* whereby the amount of taxes ascertained to be due from the shareholders was assessed against them. The court, by virtue of the consent order, was within its powers thus to admit the shareholders (the real persons in interest) as parties, and to make a correct assessment against them.

2. TAXATION—*Bank Stock—Local Taxation—Rate in Excess of Thirty Cents on the $100.00.*—The city of Richmond, under its charter, possesses plenary power of taxation, subject only to such limitations as may be placed upon the exercise of that power by the Constitution and legislature. Under an ordinance of the city approved April 9, 1915, the capital of a bank was assessed at the rate of $1.40 on the $100, instead of thirty cents, the rate imposed on other moneyed capital in the hands of individuals. It was contended by the bank that this ordinance conflicted with section 1040-a of the Code of 1904, and section 168 of the Constitution of 1902.

   *Held:* That these objections to the ordinance were disposed of in favor of the ordinance by the construction placed upon the segregation act by the Supreme Court of Appeals in the case of *City of Richmond* v. *Drewry-Hughes Co.,* 122 Va. 178, 94 S. E. 989. The exceptions in the act of 1915, in respect to the capital of merchants and the shares of stocks of banks, in the particular here involved are so concatenated as necessarily to demand the same construction.

3. TAXATION—*Banks—"Moneyed Capital."*—The general purpose of section 5219 of the Revised Statutes of the United States is to prevent discrimination by the States in favor of State banking associations against national banking associations, so that the

phrase "moneyed capital," used therein, means capital engaged in the operations of banking, which is used as a source of profit.

4. TAXATION—*Banks—Moneyed Capital.*—An ordinance imposing taxes on the capital stock of a national bank at the rate of $1.40 on the $100, instead of thirty cents, the rate imposed on other moneyed capital in the hands of individuals, is not in conflict with section 5219 of the Revised Statutes of the United States, prohibiting the taxation of national bank stock at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the State.

Error to a judgment of the Hustings Court of city of Richmond, on a motion to correct an erroneous assessment. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*H. R. Pollard,* for the plaintiff in error.

*Coke & Pickrell, Legh R. Page* and *E. Warren Wall,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

This case originated in the hustings court with a petition by the Merchants National Bank of Richmond against the city of Richmond, to correct an alleged erroneous assessment for the year 1915, directly against the bank upon its capital stock, surplus and undivided profits, less the assessed value of its real estate and other deductions allowed by law, instead of being levied and assessed against the shareholders of the stock of the bank upon the value of their shares ascertained as the law prescribes. Moreover, complaint was made that the assessment instead of being limited to the alleged maximum rate of thirty cents on each $100 of the ascertained value of the shares of stock was fixed levied and collected at $1.40 on each $100 of such value. To an order of the hustings court granting the relief prayed for, this writ of error was allowed.

Two assignments of error were pressed: 1. That the court erred in overruling the motion of the city to dismiss the proceeding for want of jurisdiction. 2. In establishing thirty cents on the $100 of value as the maximum rate that could be levied by the city on the shares of bank stock in place of $1.40.

[1] The first assignment rests upon the contention that the assessment, in essence, is against the stockholders, and, therefore, the proceeding should have been in their name and could not be maintained by the bank. *Main St. Bank, Inc.* v. *City of Richmond,* 122 Va. 594, 95 S. E. 386.

Whatever merit there may have been in this assignment in the first instance, the error in procedure was cured by the consent order, *nunc pro tunc,* whereby the amount of taxes ascertained to be due from the shareholders was assessed against them. The court, by virtue of the consent order, was within its powers thus to admit the shareholders (the real persons in interest) as parties, and to make a correct assessment against them. *Commonwealth* v. *Schmelz,* 114 Va. 364, 76 S. E. 905.

[2] 2. The remaining controverted question for our determination is, what was the maximum rate which the city of Richmond could lawfully levy on the shares of bank stock for the year 1915?

By way of premise to the consideration of this feature of the case, we may observe, that the city of Richmond, under its charter, possesses plenary power of taxation, subject only to such limitations as may be placed upon the exercise of that power by the Constitution and legislature.

The ordinance approved April 9, 1915, is founded upon the city charter and the segregation act passed by the General Assembly at its extra session of 1915, and approved March 15, 1915, (an emergency was declared to exist with respect to it, so that the act was in force from its passage). Acts 1915, Ch. 85, p. 119. The gravamen of the bank's

complaint is that its capital is taxed at the rate of $1.40 on the $100 instead of thirty cents, the rate imposed on other moneyed capital in the hands of individuals. Its contentions are based on an alleged conflict between the ordinance and section 1040-a of the Code; section 168 of the State Constitution; the fact that at the date of the assessment the rate of taxation on all intangible property taxed that was also taxed by the State was at the rate of thirty cents on the $100; and that a higher rate than thirty cents contravened section 5319, Revenue Statute of the United States. All of these objections, except the last were practically disposed of by the construction placed upon the segregation act by the decision of this court in the case of *City of Richmond* v. *Drewry-Hughes Co.,* 122 Va. 178, 94 S. E. 989.

The history of the litigation of which that case is the sequel was this: By authority of the ordinance (one of the features of which is here drawn in question) the city assessed the capital employed by Drewry-Hughes Co. (and other merchants residing and doing business in the city), in their business as merchants, at $1.40 on the $100. From an order of the hustings court declaring the correct rate of taxation in that case to be thirty cents on the $100, the city appealed, and at the November term, 1916, of this court that judgment was affirmed. The case again came before us on rehearing, and was ably argued by the original counsel, and also by others, whose localities were affected by the decision, on briefs; and in an exhaustive opinion, written by Judge Kelly and concurred in by all the other judges, the judgment of the hustings court was reversed. The last opinion covers the contentions stressed in this case, save the insistence that the exception in the segregation act as therein construed would, if applied to national banks, be violative of section 5219, *supra.*

Since, therefore, we have no purpose to recede from the conclusions reached in the merchants' tax case, further elab-

oration of the questions settled by that decision is un-- necessary. This statement is predicated upon the view that the exceptions in the act of 1915, in respect to the capital of merchants and the shares of stock of banks in the particular here involved are so concatenated as necessarily to demand the same construction.

The act after segregating the several kinds and classes of property, so as to specify upon what subjects State taxes and upon what subjects local taxes may be levied, respectively, and limiting the maximum local rate of taxation on segregated intangible personal property at thirty cents on the $100 of assessed value thereof, contains the following exception: "except that the capital of merchants shall not be subject to the State taxation, but may be taxed locally ·as prescribed by law; and the shares of stock of banks, banking associations, and other institutions enumerated in section seventeen in Schedule 'D' of the act aforesaid, which shares of stock shall be taxed as provided by law."

Judge Kelly, in his opinion, justly observes: "If the purpose of the draftsman had been to restrict local taxation of the capital of merchants to the rate previously named in that particular act, undoubtedly he would have used the words, 'as prescribed by this act,' or their equivalent, instead of 'as prescribed by law.' If this be not true, then it would follow that 'shares of stock of banks' could only be taxed locally at the thirty-cent rate, for, as we have seen, it cannot be plausibly contended that the words, 'as prescribed by law,' when applied in the act to merchants' capital, have any other or different meaning than the words 'as provided by law' when applied therein to bank stock. The necessary result of the decision of this court in *Tresnon* v. *Board of Supervisors,* 120 Va. 203, 90 S. E. 615, is that the local taxation of bank stock is not controlled by the terms of the segregation act."

Judge Kelly also points out that section 168 of the Constitution does not conflict with the right of the taxing power

to tax different classes of intangible personal property at different rates. Citing Judson on Taxation, sec. 441; 37 Cyc. 746; *Bradley* v. *City of Richmond*, 110 Va. 521, 524, 66 S. E. 872.

[3, 4] Adverting briefly to the contention that the construction we are disposed to place upon the segregation act and the city ordinance is in conflict with section 5219 of Revised Statutes of the United States, in that the tax of $1.40 on the $100 on the shares of bank stock is a higher rate than is assessed upon other "moneyed capital in the hands of individual citizens of the State." Obviously, the general purpose of the Federal statute is to prevent discrimination by the States in favor of State banking associations against national banking associations; and no such discrimination is suggested or shown from this record to exist.

In 9 U. S. Comp. Stat. (1916), title "National Banks," at p. 11993, note 29, it is said: "Moneyed capital.—The purpose of this section is to prevent unjust discrimination against United States banks, so that the phrase 'moneyed capital' used therein means capital engaged in the operations of banking, which is used as a source of profit, so that Act N. Y., July 1, 1882, s. 312, declaring that the stockholders in banks organized under the authority of the State or United States shall be assessed for the value of their stock, was not void under this section, because the assessment roll showed that the securities of life insurance companies, the stock of State corporations, the deposits of savings banks, the stock of trust companies, and companies created outside of the State and owned in the State, virtually escaped taxation, since such property, excepting that of savings banks and trust companies, was not 'moneyed capital in the hands of individuals' as contemplated by this section." *Mercantile Nat. Bank.* v. *New York* (1887), 121 U. S. 138, 7 Sup. Ct. 826, 30 L. Ed. 895; *National Bank, etc.* v. *Boston* (1888), 165 U. S. 60, 8 Sup. Ct. 772, 31 L. Ed. 689; *Palmer* v. *McMa-*

*hon* (1890), 133 U. S. 660, 10 Sup Ct. 324, 33 L.Ed. 772; *Talbott* v. *Board of Commissioners, etc.* (1891), 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210; *First Nat. Bank* v. *County of Chehalis* (1897), 166 U. S. 440, 17 Sup. Ct. 629, 41 L. Ed. 1060; *New York, ex rel. Amoskeag Sav. Bank* v. *Purdy* (1913), 231 U. S. 373, 34 Sup. Ct. 114, 58 L. Ed. 373.

These decisions of the Supreme Court of the United States (and authorities might be multiplied on the subject) show that the fundamental grievance of defendant in error, that the rate of tax imposed under the segregation act and the ordinance of the city upon the shareholders of bank stock constitutes "a gross and illegal discrimination against that species of property as compared with all other moneyed capital," is groundless.

In conclusion, it is only fair to the learned judge of the hustings court to state, that on August 3, 1917, when he delivered his judgment in this case, fixing the maximum amount of tax against shareholders of bank stock at thirty cents on the $100, the first decision of this court in *City of Richmond* v. *Drewry-Hughes Co.* was still in force, and he naturally regarded it as strongly persuasive if not controlling authority in the instant case.

For the reasons given, the order complained of must be reversed, and the case remanded for further proceedings to be had therein in conformity with the views expressed in this opinion.

*Reversed.*