**143 So. 23**

**FIRST NAT. BANK et al. v. LOUISIANA TAX COMMISSION et al.**

No. 31528.

May 23, 1932.

Rehearing Denied June 20, 1932.

Percy Saint, Atty. Gen., and Robert J.
O'Neal, Aubrey M. Pyburn, and Blanchard,

Goldstein, Walker & O'Quin, all of Shreveport, for appellants.

Lewell C. Butler, J. P. Wallace, Barksdale, Bullock, Warren, Clark & Van Hook, and Thatcher, Browne, Porteous & Myers, all of Shreveport, for appellees.

O'NIELL, C. J.

The First National Bank, the Commercial National Bank and the American National Bank, being all of the national banks in Shreveport, brought this suit to avoid payment of the taxes levied on their capital stock, for the year 1930, under the provisions of Act No. 14, Extra Session of 1917, as amended by Act No. 116 of 1922 and Act No. 221 of 1928. The complaint has reference to the statute itself; the contention being that the taxes imposed on the shares of bank stock are at a greater rate than the rate of taxes assessed upon other moneyed capital in the hands of individual citizens of the state coming into competition with the business of national banks. If the complaint is well founded, the statute is violative of one of the conditions on which the Congress, by section 5219, U. S. R. S., as amended (12 USCA § 548), has given the states permission to levy taxes on shares of stock in national banks. The Commercial National Bank paid the city taxes before filing the suit, and, alleging that the payment was made in error, prayed that the city should be ordered to refund the taxes so paid. That part of the Commercial National Bank's demand was dismissed on· an exception of no cause of action; and from that decision the bank appealed. See Commercial National Bank v. Louisiana Tax Commission et al. (La. Sup.) 143 So. 32.[1] The three suits were

[1] 175 La. 149.

consolidated for the purpose of the trial of the main issue, which resulted in a judgment in favor of the banks, annulling the taxes, as being violative of section 5219, U. S. R. S., as amended. The defendants, Louisiana tax commission, police jury, assessor, tax collector, and city of Shreveport, have appealed from the decision.

The plaintiffs contend that the method of levying taxes on national bank stock violates not only the provision in section 5219, U. S. R. S., as amended, section 548 of title 12 USCA, but also the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, and the clause in section 1 of article 10 of the Constitution of Louisiana, requiring that "all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax."

Act No. 14, Extra Session of 1917, as amended by Act No. 116 of 1922 and by Act No. 221 of 1928, provides, not only for the levying of taxes on shares of stock of *national* banks, but provides, indiscriminately, "for the levying of an annual assessment on the shares of stock and real estate of all banks, banking companies, firms, associations, or corporations engaged in the banking business, chartered under the laws of the State of Louisiana, or the United States, doing business in the State of Louisiana." It is conceded, therefore, that, if the method of taxing complained of in this suit is violative of section 5219, U. S. R. S., as amended, with regard to national banks, it is violative also of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, and the clause in the State Constitution requiring equality of taxation, with re-

gard to state banks, notwithstanding they are not charging discrimination in favor of moneyed capital in the hands of individual citizens coming into competition with the business of the banks.

The state levies taxes on every other corporation, other than those engaged in the banking business, by assessing the property of the corporation in the name of the corporation, just as the property of an individual is assessed in his name. But, to avoid double taxation, the capital stock of corporations other than those engaged in the banking business is not assessed for taxes. On the other hand, the capital stock of corporations engaged in the banking business is assessed for taxes, at the book value of the stock, less the value of the real estate owned by the bank, which real estate is also assessed for taxes; but no other property of such corporations is assessed for taxes.

The complaint of the plaintiffs in this suit, stated broadly, is that, by assessing the capital stock of banks, instead of assessing their property, and by assessing the property of corporations that compete with the banks in some parts of their business, instead of assessing their capital stock, the state is discriminating against the banks, in that they do not have the benefit of the exemptions from taxation, provided for in the Constitution, and the corporations competing with them in a part of their business do have the benefit of such exemptions. The plaintiffs have reference, particularly, to the exemptions (in section 4 of article 10) of cash on hand or on deposit; loans or other obligations secured by mortgage on property located exclusively in the state, and the notes or other evidences thereof; loans by life insur-

ance companies to policyholders, secured only by their policies; loans by homestead associations to their members, secured only by the stock of such associations; debts due for merchandise or articles of commerce or for services; and obligations of the state or its political subdivisions. The plaintiffs contend also that there is a discrimination against them in that, in the assessment of credits, meaning, particularly, promissory notes, bills and accounts receivable, *not exempt from taxation,* a deduction is made of bills and accounts payable, *not exempt from taxation* as the property of the party to whom they are payable. Act No. 24, Extra Session of 1918. The purpose of that is to avoid double taxation. New Orleans Securities Co. v. City of New Orleans, 173 La. 1097, 139 So. 635. That is the purpose also of the exemption of promissory notes or other evidences of debt secured by mortgage on property which bears its just proportion of taxes, and debts due for merchandise or articles of commerce.

At first thought it seems that, if the capital stock, instead of the property, of a corporation is taxed, as in the case of corporations engaged in the banking business, the stockholders do not have the benefit of the exemptions which we have mentioned, or the benefit of the right to offset their bills and accounts receivable by the bills and accounts payable, *not exempt from taxation.* But that is not true. As a matter of mathematics, it is certain that there is no discrimination, in that respect, against the banking corporations, whose capital stock is assessed for taxes, or in favor of the corporations whose property is assessed for taxes. The reason why there is no such discrimination is that the book value of bank stock, which value (after

deducting the value of the bank's real estate) is the value at which the stock is assessed for taxes, is the difference between the value of the bank's assets and the amount of its liabilities. In other words, in computing the value at which bank stock must be assessed, all of the bank's bills and accounts payable are deducted. It is true that, among the assets that go to make up the book value of bank stock, there are included bills and accounts receivable which, if they belonged to a corporation not engaged in the banking business, might be exempt from taxation; but, among the liabilities which go to lessen the book value of bank stock, are all of the bills and accounts payable, whether exempt or not exempt from taxation; whereas, in the assessment of the bills and accounts receivable belonging to all other corporations, except those engaged in the banking business, the only bills or accounts payable that are deducted from the amount of the bills and accounts receivable are those that are not exempt from taxation, as the property of those to whom they are payable. It is impossible, therefore, for the exemptions from taxation, which the plaintiffs complain of, to operate as a discrimination against the stockholders of corporations engaged in the banking business, or in favor of the stockholders of corporations competing for a part of the banking business, merely because the banks are taxed by the assessment of their capital stock and the other corporations are taxed directly by the assessment of their property.

The restriction put upon the right of the states to tax shares of stock in national banks, by section 5219, U. S. R. S., is expressed thus:

"In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State coming into competition with the business of national banks: Provided, That bonds, notes, or other evidences of indebtedness in the hands of individual citizens not * * * engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital, within the meaning of this section."

The proviso, declaring that bonds, notes or other evidences of debt in the hands of individual citizens not engaged in the banking or investment business, and representing merely personal investments not made in competition with such business, should not be deemed moneyed capital, within the meaning of the section, was added by an amendment made in 1923 (12 USCA § 548) to make the law conform with the interpretation which the Supreme Court of the United States had placed upon it in Mercantile Nat. Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895.

The complaint that the owners of bank stock are discriminated against because the method of assessment does not admit of offsetting bills and accounts receivable by bills and accounts payable was urged in People of State of New York ex rel. Amoskeag Savings Bank v. Purdy, Commissioner, 231 U. S. 373, 34 S. Ct. 114, 121, 58 L. Ed. 274, with regard to the same method of taxation that is complained of here; and the court rejected the complaint, thus:

"According to this practical test, it seems to us that the scheme adopted by the state of New York for taxing shares in national banks

cannot upon this record be denounced as violative of the limitations prescribed by § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502). The holders of shares in state banks are subjected to precisely the same taxation, and with respect to other competitive institutions, such as trust companies, the franchise taxes imposed upon them apparently result in a substantially similar burden upon the shareholder. Nor is there any discrimination in favor of savings banks. With respect to individual bankers, there is a difference, they being apparently subject to the local rate of taxation, and entitled to the privilege of deduction for personal debts; but as they are taxable upon the amount of the capital invested in the banking business, which is normally only such as remains after the deduction of debts, it is not plain that they possess any valuable privilege of reducing the tax assessment by deducting debts. Foreign bankers are separately treated, for reasons sufficiently obvious; but no criticism is made of this. If there be other forms of 'moneyed capital in the hands of individual citizens' of the state employed in a banking or quasi-banking business in competition with the national banks, and which are subjected to a more favorable rule of taxation, our attention is not called to them. Moreover, we agree with what was said by the court of appeals of New York in the Feitner Case (191 N. Y. 88, 96, 83 N. E. 592) that 'the state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality, or unfriendly discrimination is inflicted upon them.' "

■ The record here discloses that the plaintiffs are not really concerned with the tax exemptions complained of in their petition. The exemption of cash on hand or on deposit, for example, is not a discrimination against the banks, because cash on hand or on deposit is idle capital, and not moneyed capital coming into competition with the business of national banks. The exemption of loans secured by mortgages is not a discrimination against national banks, because, as shown by the testimony of their officers, they consistently avoid such loans. The exemption of loans made by life insurance companies to their policyholders and secured by their policies is a matter of no concern to the banks, not only because, in the very nature of things, they cannot make such loans on the same terms or basis, but also because the state has no right to tax loans made by insurance companies domiciled in other states, and, as far as the record shows, there are no loans made by life insurance companies domiciled in this state. The exemption of loans made by homestead associations to their members, secured only by the stock of such associations, was found by the district judge to be not a discrimination against the banks, or their shareholders. That subject will be discussed hereafter with reference to the several institutions which the plaintiffs say are their competitors. The exemption of debts (meaning credits) due for merchandise or articles of commerce, which are supposed to have borne their just burden of taxation, is made for the purpose of avoiding double taxation, and is a matter which does not concern the banks because they do not deal in merchandise or such articles of commerce as the exemption has reference to. The exemption of the obligations of the state and its political subdivisions is also a matter of public policy,

which does not concern the banks because they do not take such securities as a matter of investment but only for immediate sale.

The institutions which the plaintiffs contend have moneyed capital invested in competition with the business of national banks are the homestead associations, Morris Plan banks and Morgan Plan banks, small loan companies licensed under Act No. 7 of the Extra Session of 1928, finance and securities companies licensed under Act No. 221 of 1926 and lending money on chattel mortgages, principally on automobiles, pawnbrokers, life insurance companies, real estate mortgage investment companies, and bond investment brokers.

██ Homestead associations, or building and loan associations, in Louisiana, are regarded as quasi public institutions, not working for profit but to enable wage-earners to own their homes, and therefore entitled to special favors in the way of tax exemptions, under a well-settled public policy, which prevails also in other states. Mayre v. Pierson, 171 La. 1077, 133 So. 163. Therefore, even if the tax system complained of by the plaintiffs did operate as a discrimination in favor of homestead associations, that would not be a just cause for complaint. In Louisville Gas & Electric Co. v. Coleman, 277 U. S. 40, 48 S. Ct. 423, 426, 72 L. Ed. 775, it was said:

"The exemption of building and loan associations from the operation of the tax is a different matter. The equal protection clause of the Fourteenth Amendment does not preclude a state in imposing taxes from making exemptions, provided the power is not exercised arbitrarily. It may exempt the property of churches, charitable institutions, and the like; and it does not admit of fair doubt that, under the circumstances disclosed by the opinion of the court below in the Middendorf Case [202 Ky. 118, 259 S. W. 59], it has lawfully exempted building and loan associations. That court points out that a building and loan association under the Kentucky statutes must receive payments from members only and make loans to members only, in pursuance of a plan set forth. Money accumulated is to be loaned to members according to a rule of priority. The essential principle of such an association is mutuality. The purpose of the statute, the court below says, was to provide the members of the associations with the means of borrowing money for the acquisition of homes, in recognition of the duty of the state to encourage the acquisition of homes by its citizens. Such associations are also placed by the state statute in a separate class for purposes of ad valorem taxation. It is made clear by the lower court that the purpose of the exemption was to enable these associations, by relieving them of a burden, more completely to carry out the quasi public purpose which the Legislature designed in providing for their creation."

The opinion which has been quoted from more often perhaps than any other on this subject was rendered in Mercantile National Bank of New York v. Mayor, etc., of New York, 121 U. S. 138, 7 S. Ct. 826, 838, 30 L. Ed. 895. The bank's complaint was that the New York tax statute exempted trust companies, mutual savings banks and life insurance companies. The question was whether those exemptions violated the condition in section 5219, U. S. R. S., and the conclusion was

that, although in fact the total amount of the moneyed capital which was thus exempted from taxation greatly exceeded the amount of capital employed by all of the national banks in New York, there was no violation of section 5219, because the exemptions applied either to capital that was not really in competition with the national banks' capital, or to capital which the policy of the state reasonably required should be exempted from taxation. We excerpt here expressions in the opinion which are particularly appropriate, viz.:

"According to the stipulation in this case, the deposits in such banks amount to $437,-107,501, with an accumulated surplus of $68,-669,001. It cannot be denied that these deposits constitute moneyed capital in the hands of individuals, within the terms of any definition which can be given to that phrase; but we are equally clear that they are not within the meaning of the act of congress in such a sense as to require that, if they are exempted from taxation, shares of stock in national banks must thereby also be exempted from taxation. * * * We have already seen that, by previous decisions of this court, it has been declared that 'it could not have been the intention of congress to exempt bank shares from taxation, because some moneyed capital was exempt,' (Hepburn v. School Directors, 23 Wall. 480 [23 L. Ed. 112, supra]) and that 'the act of Congress was not intended to curtail the state power on the subject of taxation. It simply required that capital invested in national banks should not be taxed at a greater rate than like property similarly invested. It was not intended to cut off the power to exempt particular kinds

of property, if the legislature chose to do so.' Adams v. Nashville, 95 U. S. 19 [24 L. Ed. 369]. The only limitation, upon deliberate reflection, we now think it necessary to add, is that these exemptions should be founded upon just reason, and not operate as an unfriendly discrimination against investments in national bank shares. However large, therefore, may be the amount of moneyed capital in the hands of individuals, in the shape of deposits in savings banks as now organized, which the policy of the state exempts from taxation for its own purposes, that exemption cannot affect the rule for the taxation of shares in national banks, provided they are taxed at a rate not greater than other moneyed capital in the hands of individual citizens otherwise subject to taxation."

That decision has been followed in cases where national banks complained of tax exemptions being granted to savings banks. In Davenport National Bank v. Davenport Board of Equalization, 123 U. S. 83, 8 S. Ct. 73, 74, 31 L. Ed. 94, it was said:

"While the deposits in the savings banks * * * constituted moneyed capital in the hands of individuals, yet * * * they were not within the meaning of the act of congress in such a sense as to require that because they were exempted from taxation the shares of stock in national banks must also be exempted."

In Bank of Redemption v. Boston, 125 U. S. 60, 8 S. Ct. 772, 776, 31 L. Ed. 693, it was said again, with reference to tax exemptions granted to savings banks, that section 5219, U. S. R. S. did not interfere with the right of a state, as a matter of public policy, to ex-

empt from taxation institutions that were reasonably entitled to the exemption, even though they might employ capital in competition with national banks. Referring to the savings banks, the court said:

"They are substantially institutions, under public management, in pursuance of a great and beneficial public policy, organized for the purpose of investing the savings of small depositors, and not as banking institutions in the commercial sense of that phrase. We adhere to the rule as declared in the cases heretofore decided, which forecloses further discussion as to the present point in this case."

Again, in Palmer v. McMahon, 133 U. S. 660, 10 S. Ct. 324, 326, 33 L. Ed. 772, it was said:

"Because a state statute does not provide for the taxation of shares in corporations other than banks, it does not follow that the * * * shareholders in national banks [are] discriminated against. * * *

"'The mode of taxation adopted by the state of New York in reference to its corporations, excluding trust companies and savings banks, does not operate in such a way as to make the tax assessed upon shares of national banks at a greater rate than that imposed upon other moneyed capital in the hands of individual citizens.'"

First National Bank of Wellington v. Chapman, 173 U. S. 205, 19 S. Ct. 407, 409, 43 L. Ed. 669, is directly in point, not only on the proposition that section 5219, U. S. R. S., does not interfere with the right of a state to grant exemptions from taxation as a matter of public policy, but also on the proposition that the privilege allowed to cor-porations whose property is assessed for taxation to deduct their debts from their credits is not a discrimination against the stockholders of national banks, whose shares are assessed for taxes. Mr. Justice Peckham, for the court, said:

"The complaint is founded upon the allegation that the owners of what is termed 'credits' in the law of Ohio (Rev. St. § 2730) are permitted to deduct certain kinds of their debts from the total amount of their credits, and such owners are assessed upon the balance only, while no such right is given to owners of shares in national banks. * * *

"The main purpose of congress in fixing limits to state taxation on investments in national banks was to render it impossible for the state in levying such a tax to create and fix an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of congress is to be read in the light of this policy. 'Moneyed capital' does not mean all capital the value of which is measured in terms of money, neither does it necessarily include all forms of investments in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations are represented by certificates showing that the owner is entitled to an interest expressed in money value in the entire capital and property of the corporation; but the property of the corporation which constitutes this invested capital may consist mainly of real and personal property, which, in the hands of individuals, none would think of calling money-

ed capital, and its business may not consist in any kind of dealing in money or commercial representatives of money. This statement is taken from Mercantile Bank v. New York, 121 U. S. 138, 155, 7 S. Ct. 826 [30 L. Ed. 895, 901]. That case has been cited with approval many times, especially in First National Bank of Garnett v. Ayers, 160 U. S. 660, 16 S. Ct. 412 [40 L. Ed. 573], and in Aberdeen Bank v. Chehalis County, 166 U. S. 440, 17 S. Ct. 629 [41 L. Ed. 1069].

"The result seems to be that the term 'moneyed capital,' as used in the federal statute, does not include capital which does not come into competition with the business of national banks, and that exemptions from taxation, however large, such as deposits in savings banks or of moneys belonging to charitable institutions, which are exempted for reasons of public policy, and not as an unfriendly discrimination as against investments in national bank shares, cannot be regarded as forbidden by the federal statute."

It was admitted on the trial of this case that the investments made by individuals who habitually invested their own funds, secured by mortgages on lands in Caddo parish, of which Shreveport is the parish seat, amounted to more than $3,000,000 in 1930. The testimony on the subject shows that those loans were, comparatively, long-time loans, ranging from one to five years, and that the national banks would never handle such loans. Besides, the admission leaves the inference that the mortgage notes referred to were in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with the banking business. First National Bank v. Anderson, 269 U. S. 350, 46 S. Ct. 135, 70 L. Ed. 304.

■ The testimony leaves no doubt that there has been no competition with the national banks on the part of any concern lending money on mortgages on real estate, because the national banks will never handle such loans. In fact two of the investment companies lending money on mortgages on lands in the parish of Caddo were organized by the owners, respectively, of two of the national banks that are the plaintiffs in this case; and the purpose of organizing the investment companies was to handle loans secured by mortgages, which the national banks were either not willing or not authorized to handle.

■ The small loan companies, complained of in this suit, are those that make loans not exceeding $300, and that are allowed to charge interest at the rate of 3½ per cent. per month. The loans, as a rule, are secured by chattel mortgages. The testimony of the officers of these companies, and of the officers of the national banks, leaves no doubt that these small loan companies are not competitors of the national banks. The business of the small loan companies, the same as that of the pawnbrokers, is not in any class of business done by national banks, and is not in competition with any of the business done by national banks.

■■ The business of the Morris Plan Company and that of the Morgan Plan Company is the making of small loans, averaging $180, payable out of the borrower's salary. The testimony of the bank officials shows that the business of such companies is not in competi-

tion with the business done or desired by the national banks. And that is true of the so-called finance and securities companies, whose business is to lend money on long series of notes given for the price of automobiles, refrigerators, radios, etc., and secured by chattel mortgages. The national banks would never handle such business. They prefer to —and do in fact—lend to such companies.

The loans made by life insurance companies, domiciled in other states, on mortgages on lands in Caddo parish, amounted to $662,200 in the two years, 1929 and 1930; but they were longer time loans than a national bank would make. And that is true of the two mortgage investment companies, and bond investment brokers, that were doing business in Shreveport in 1930. Their business was such as the national banks would never handle or desire to handle, according to the testimony of the officers of the banks, as well as the testimony of the officers of the investment companies.

The plaintiffs contend that the method of taxing the shares of stock, instead of the property, of corporations engaged in the banking business, discriminates against them because the Legislature, by Act No. 163 of 1924, p. 263, undertook to require that the bonds of any of the states, or of any of their political subdivisions, bonds of railroads or other public utilities, of manufacturing or industrial corporations, and mortgage bonds, not exempt from taxation, should be assessed at 10 per cent. of their market value. The statute is so palpably violative of the constitutional requirement that all property that is subject to taxation shall be assessed at its actual cash value, that it has never been enforced. City of New Orleans v. People's Insurance Co., 27 La. Ann. 519; Morrison v. Larkin, 26 La. Ann. 699; First National Bank v. Board of Reviewers, 41 La. Ann. 188, 5 So. 408; Grand Lodge v. City of New Orleans, 44 La. Ann. 659, 11 So. 148; Southland Investment Co. v. Jeter, 171 La. 106, 129 So. 722. Mr. Jeter is the tax assessor for Caddo parish; and he testified in this case that he had not been able to find in the parish any of the securities referred to in Act No. 163 of 1924. It is certain, therefore, that the statute has not had any effect upon the business of the plaintiffs.

The attorneys for the plaintiffs lay great stress upon the fact that the total amount of the assessments of credits, in 1930, in the parish of Caddo, was less than $60,000, and in the state less than $3,000,000. No evidence, however, was offered to show that any moneyed capital invested in credits, not exempt from taxation, was escaping taxation. Some credits are exempt from taxation, to avoid double taxation, and the credits that are not exempt from taxation are offset by the owner's debts, not exempt from taxation as the property of the persons to whom they are due. It is plain, therefore, that any corporation whose assets consist entirely of credits must be assessed at its net worth; but such a corporation would not be assessed for any greater sum if its capital stock, instead of its property, were assessed for taxes.

The decision of the district judge in this case seems to be founded upon the idea that section 5219 is violated if there is a discrimination in favor of moneyed capital invested in any line of business that a national bank may engage in without violating

its charter, even though the favored investment is in a line of business that the national banks do not and never will desire to engage in. On the contrary, we consider it well settled that the discrimination is not material, or violative of the federal statute, unless it favors moneyed capital invested in actual and substantial competition with the capital invested in the shares of national banks; that is to say, the discrimination is of no importance unless it is in favor of moneyed capital invested in a line of business which the national banks engage in, or which they might engage in but for the competition. Mercantile National Bank v. New York, 121 U. S. 138, 7 S. Ct. 826, 30 L. Ed. 895; Palmer v. McMahon, 133 U. S. 660, 10 S. Ct. 324, 33 L. Ed. 772; First National Bank v. Chehalis County, 166 U. S. 440, 17 S. Ct. 629, 41 L. Ed. 1069; National Bank of Commerce v. Seattle, 166 U. S. 463, 17 S. Ct. 996, 41 L. Ed. 1079; Georgetown National Bank v. McFarland, 273 U. S. 568, 47 S. Ct. 467, 71 L. Ed. 779. Any other rule would be not in line with the fundamental rule that one who pleads that a burden of taxation under a state statute is violative of the Constitution of the United States must show not only that the state statute might, in its operation, violate the constitutional provision invoked, but that the statute does in fact, as applied to his case, violate the constitutional provision. Albany County Board of Supervisors v. Stanley, 105 U. S. 305, 26 L. Ed. 1044; Citizens' National Bank v. Kentucky, 217 U. S. 443, 30 S. Ct. 532, 54 L. Ed. 832; Keeney v. Comptroller of New York, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139; Darnell v. Indiana, 226 U. S. 390, 33 S. Ct. 120, 57 L. Ed. 267; Straus v. Foxworth, 231 U. S. 162, 34 S. Ct. 42, 58 L. Ed. 168; Pullman Co. v. Knott, 235 U. S. 23, 35 S. Ct. 2, 59 L. Ed. 110; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 43 S. Ct. 526, 67 L. Ed. 935; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495.

The decision of the district judge in this case was based largely upon certain expressions in the opinion delivered by Chief Justice Hiscock of the Court of Appeals of New York in People ex rel. Pratt v. Goldfogle, 242 N. Y. 277, 151 N. E. 452, 459, and upon certain expressions in the opinion rendered in First National Bank v. City of Hartford, 273 U. S. 548, 47 S. Ct. 462, 464, 71 L. Ed. 767, 59 A. L. R. 1.

In the Goldfogle Case the relator challenged the constitutionality of a statute of New York (Laws of 1923, c. 897) levying a tax upon "moneyed capital * * * 'coming into competition with the business of national banks.'" The purpose of the statute was to comply with section 5219, U. S. R. S., as amended in 1923 (12 USCA § 548), and to comply with the ruling in People ex rel. Hanover National Bank v. Goldfogle, 234 N. Y. 345, 137 N. E. 611. The relator set up several grounds for the plea that the statute was unconstitutional; the principal ground being that the description of the property taxed and to be assessed was indefinite. The court ruled that the statute was not unconstitutional, and, as to the complaint of want of description, said that moneyed capital was in competition with national banks when it was employed in such operations as were commonly conducted by such banks. Syllabus No. 8. It was in that connection that Chief Justice Hiscock said:

"This purpose seems to us to require an interpretation which protects generally the business which national banks are authorized to carry on and may at any time engage in and not the business represented by actual transactions occurring at any particular time or place. Certainly the statute would utterly fail of its purpose if, as the result of discriminatory taxation, a national bank had been driven or kept out of a particular line of business in some locality by other moneyed capital and it then could be said that there was no competition by the latter with the former requiring equality of taxation."

The decision in the Goldfogle Case, therefore, is not authority for the decision rendered by the district judge in this case.

Some of the expressions used in the Hartford Case, as in Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774, standing alone, might give the impression that the exemption from taxation of promissory notes secured by mortgage on real estate in Louisiana is a discrimination against the owners of shares of stock in national banks in this state. But the expressions have no such meaning when considered in connection with the facts of the case. For example, the court found these facts in the Hartford Case:

"On the trial, plaintiff called numerous witnesses, who gave testimony, uncontradicted by defendant, tending to show the nature and extent of various classes of moneyed capital in the hands of individuals in the state and the nature of its employment in competition with the business carried on by national banks. There are real estate firms engaged in lending money to individuals in the vicinity of plaintiff's banking house, the amount thus loaned amounting annually from $250,000 to $300,000. According to the testimony, the making of these loans affords the same competition to plaintiff as loans made by banks. * * * Neither the capital employed in these various enterprises by individuals or corporations, so far as invested in the credits, nor the shares held by investors in such corporations are subjected to the ad valorem tax. * * *

"We do not conceive that in order to establish the fact of competition it is necessary to show that national banks and competing investors solicit the same customers for the same loans or investments. It is enough as stated if both engage in seeking and securing in the same locality capital investments of the class now under consideration which are substantial in amount."

That is a long way from saying that it is enough if the investments alleged to be favored are in a class of business which a national bank might engage in without violating its charter, even though it be a class of business which the national banks never engage in and have no desire to engage in.

If the federal statute forbids the states to encourage, by tax exemption or favoritism, investments in any line of business that national banks are authorized to engage in, even though they do not and will not engage in that line of business, the courts have wasted much time in deciding the cases before them, in determining whether in fact there was competition between the favored investments and the investments actually made or desired to be made by the national banks. What a national bank actually does is a question of fact, but what it is authorized to do is a question of

law, of which the courts take judicial cognizance.

First National Bank v. County of Chehalis, 166 U. S. 440, 17 S. Ct. 629, 41 L. Ed. 1069, contains a review of all of the cases on the subject theretofore decided, and an extensive quotation from Mercantile National Bank v. New York, supra, which is there declared to settle the law on the subject. The Chehalis Case holds:

"The omission from taxation of investments by individual citizens in loans and securities, and of moneyed capital invested in stocks and bonds, does not make the taxation of the shares of capital stock in a national bank invalid as an unfair discrimination against the latter, unless it is shown that the money invested in the property which is not assessed comes into competition with the business of national banks.

"An allegation that investments were 'taxable capital,' without describing their character, is an averment in the nature of a legal conclusion."

To the same effect were the rulings in National Bank of Commerce v. Seattle, 166 U. S. 463, 17 S. Ct. 996, 41 L. Ed. 1079, First National Bank v. Chapman, 173 U. S. 213, 19 S. Ct. 407, 43 L. Ed. 673, and Des Moines National Bank v. Fairweather, 263 U. S. 102, 44 S. Ct. 23, 68 L. Ed. 191.

In First National Bank v. City of Hartford, on which the district judge rested his decision in this case, Mr. Justice Stone, for the court, referred to First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 303, for a definition of "other moneyed capital" as used in section 5219, U. S. R. S., and said:

"The question thus raised involves considerations both of fact and of law. To answer it, it is necessary to ascertain the nature and extent of the moneyed capital in the hands of individual citizens within the state and the relation of its employment, in point of competition, to the business of plaintiff and other national banks. It is necessary also to ascertain the precise meaning to be given the statute as applied to the facts in hand in order to determine whether the particular moneyed capital and the particular competition with which we are here concerned are moneyed capital and competition within the spirit and purpose of the statute."

Mr. Justice Stone handed down the opinion also in Georgetown National Bank v. McFarland, 273 U. S. 569, 47 S. Ct. 467, 71 L. Ed. 779, and there the learned jurist demonstrated, by his review of the facts of the case, that, if the facts in the Hartford Case had been like they are here, the decision would have gone the other way. The Court of Appeals of Kentucky went even more into detail in finding the facts in McFarland v. Georgetown National Bank, 208 Ky. 7, 270 S. W. 995, 997, thus:

"The moneyed capital of individuals is invested in notes given for the purchase money of land or secured by a mortgage on land and running for a longer time than banks are willing to lend money for. It is not shown by anybody that any appreciable amount of money held by individuals is used in short time loans, such as the banks make, and, this being true, the capital invested in land notes and the like does not come in competition with the national banks, for they do not handle this character of paper. The facts shown by the record warrant the conclusion that no

material part of the capital held by the individuals is so invested as to come in competition with the national banks, and on the record we so hold."

In Merchants' National Bank of Richmond v. Richmond, 256 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1135, cited by counsel for plaintiffs, the Supreme Court of Appeals of Virginia (124 Va. 522, 98 S. E. 643) held that, inasmuch as the state banks were taxed at the same rate that national banks were taxed at, there was no violation of the federal statute, even though other moneyed capital invested in competition with the national banks was taxed at a lower rate. That ruling, of course, was reversed.

In Montana National Bank v. Yellowstone County, 276 U. S. 499, 48 S. Ct. 331, 72 L. Ed. 673, the state statute taxing national banks was declared invalid because of a discrimination in favor of the state banks.

We are referred to a very recent decision, Iowa-Des Moines National Bank v. Bennett (Central State Bank v. Bennett), 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265, but we do not find the decision appropriate to this case. A tax collected from a national bank was ordered refunded, in so far as it was a discrimination in violation of section 5219, U. S. R. S., even though the collection was made in violation of the state statute.

Our conclusion is that there is no discrimination against the plaintiffs in this case.

The judgments appealed from are annulled, and the demands of the plaintiffs are rejected at their cost.

ROGERS, J., takes no part.

On Application for Rehearing.

PER CURIAM.

In the petition of the plaintiffs for a rehearing, it is said that the decision rendered by this court permits the taxing of furniture and fixtures and other personal property of national banks, as well as real estate. It is said also that the assessment rolls filed in the record show that such personal property of the banks is taxed.

We were under the impression that that complaint, as well as the complaint of the Commercial National Bank with regard to the deduction of the book value of its real estate outside of Louisiana, was put aside for the purpose of presenting for decision only the all-important question, whether the levying of taxes on shares of national bank stock, under the provisions of Act No. 14, Extra Session of 1917, as amended by Act No. 116 of 1922 and Act No. 221 of 1928, was violative of section 5219 of the Revised Statutes of the United States, as amended (12 USCA § 548). We got that impression from the statements in the briefs, particularly the statement that there was only the one question in the case— the federal question which we have mentioned.

In order to simplify the decree rendered in this case, it is now amended so as to reserve to the plaintiffs, and to each one of them, any right of action that they or any one of them may have to reduce or annul the assessment of their property for taxes, except upon the complaint that the levying of taxes on shares of national bank stock, under the provisions of Act No. 14, Extra Session of 1917, as amended by Act No. 116 of 1922 and Act No. 221 of 1928, is violative of section 5219

of the Revised Statutes of the United States, as amended (12 USCA § 548).

With this explanation and amendment, the petition for a rehearing is denied.